Lawrence Lee BUXTON,
Petitioner–Appellant,

v.

James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.

No. 88–2156.

United States Court of Appeals,
Fifth Circuit.

July 21, 1989.

Rehearing and Rehearing En Banc
Denied Aug. 17, 1989.

Stanley G. Schneider, Houston, Tex. (court appointed), for petitioner-appellant.

Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

After the district court denied his petition for habeas corpus and his application for a certificate of probable cause to appeal, petitioner Lawrence Lee Buxton applied to this court for a certificate of probable cause. We granted the certificate and we now address the merits of Buxton's petition. Because we find no violation of the Constitution or laws or treaties of the United States, 28 U.S.C. § 2241(c)(3) (1971), we affirm the judgment of the district court denying Buxton's application for habeas relief.

## I.

A Texas state district court convicted Buxton of the capital offense of murder in the course of a robbery and sentenced him to death. The Texas Court of Criminal Appeals affirmed the conviction. *Buxton v. State,* 699 S.W.2d 212 (Tex.Crim.App. 1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). The trial court set Buxton's execution date for September 30, 1986. Buxton filed a petition for a writ of habeas corpus pursuant to Tex.Code Crim. Proc. Ann. Art. 11.07 in the court which had convicted and sentenced him. That court entered factfindings and conclusions based on affidavits filed with the habeas petition and the state's brief in opposition and on the court record without holding a live evidentiary hearing, and it denied the requested relief. On appeal, the Texas Court of Criminal Appeals denied relief.

Buxton immediately filed an application for a writ of habeas corpus in the United States District Court for the Southern District of Texas. He simultaneously filed an application for a stay of execution which was unopposed by the state and granted by the district court on September 29, 1986.

Subsequently, the state moved for summary judgment on the habeas petition. The district court granted the state's summary judgment motion and vacated the stay it had previously granted, entering the order on December 18, 1987. On February 24, 1988, the district court denied Buxton's motion for a certificate of probable cause to appeal. We granted a certificate of probable cause and heard oral argument on the petition for writ of habeas corpus. Buxton also requests a stay of execution, although no execution date has been set.

In his petition before this court, Buxton has focused on two claims. The first asserts both that his counsel provided him with ineffective assistance by failing to move for a new trial after sentencing because of juror misconduct and that the district court applied the wrong standard in reviewing the state court's disposition of this question. The second argument is somewhat amorphous; it attacks the Texas capital murder sentencing scheme as unconstitutional on the ground that the scheme allows intentional discrimination against blacks whose victims were white, and at the same time attacks the scheme's constitutionality on the ground that it fails to allow for the consideration of mitigating evidence. In this petition, Buxton has not addressed a number of issues he raised before the district court, and we therefore do not consider them.

## II.  INEFFECTIVE ASSISTANCE

Buxton contends that his trial counsel failed to provide him with effective assistance by failing to make a motion for new trial on the ground of juror misconduct even though counsel was aware of the alleged misconduct.[1] Under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order to show that counsel's as-

---

1. In his state court habeas petition, Buxton framed the argument as follows:

Applicant was denied his right to the effective assistance of counsel at trial in the following respects:

3.) Counsel failed to attempt to prove an instance of jury misconduct by means of a motion for new trial.

sistance was so ineffective as to require that his conviction or sentence be overturned, the petitioner must show both that counsel's performance did not amount to "reasonably effective assistance," and that the "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. The first prong of the standard inquires into whether counsel's failures were so egregious as to amount to the denial of counsel guaranteed the defendant by the sixth amendment. The second criterion evaluates whether the defendant has shown "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068 (citations omitted); *Earvin v. Lynaugh,* 860 F.2d 623, 625–27 (5th Cir.1988). *Strickland* allows the habeas court to look at either prong first; if either one is found dispositive, it is not necessary to address the other. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. *See also Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984).

Buxton contends that his trial counsel's failure to move for a new trial meets the requirements of both of these prongs. He argues that counsel knew of the juror misconduct and yet failed to act, thereby falling below the standard of reasonably effective assistance, and that action would have resulted in a new trial. Buxton asserts secondarily that the district court applied the incorrect standard of review to the state court's factfindings, given that the findings were based on the affidavits submitted with the pleadings and the paper record. We deal with the second of these contentions first.

### A. The Presumption of Correctness

With his original state court habeas petition, Buxton filed the affidavit of Sybil Carr–Fitzgerald, one of his court-appointed lawyers at trial. Carr–Fitzgerald averred that she inadvertently overheard the jury's

conversation during its deliberations. She stated she "overheard a juror loudly state that he had conceded (paraphrase) his vote during the guilt phase of the trial when he did not feel the defendant was guilty contingent on the agreement by the other jurors that the death penalty would not be imposed by their vote." In her affidavit, Carr–Fitzgerald went on to state that every effort was made to obtain an affidavit from the juror involved and that questionnaires were sent to all members of the jury panel, but the attempts to substantiate further the claim of juror misconduct failed.

Attached to its response to the petitioner's original state court habeas petition, the state filed the affidavit of Buxton's other trial counsel, John Emmett Crow. Crow's version of the episode of alleged juror misconduct was that Carr–Fitzgerald had overheard the jury deliberations and at the time had reported the content of what she overheard: " 'Hell, I didn't even believe he was guilty and now you want me to kill him?' " Crow also asserted that his efforts to obtain an affidavit from the juror who had made the statement were fruitless.

In its findings of fact and conclusions of law on the habeas petition, the state trial court—the same Texas state district court that convicted Buxton—found expressly that the facts asserted in Crow's affidavit were true and served to demonstrate that petitioner received reasonably effective assistance of counsel. It made no explicit finding with respect to the Carr–Fitzgerald affidavit, although it implicitly rejected those portions of it which are inconsistent with Crow's affidavit.[2] The federal district court, in its findings, reviewed the state court's factfindings with a presumption of correctness, citing 28 U.S.C. § 2254(d) (1977) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and held them to be correct. The district court went on to deny Buxton's ineffective assistance claim, holding that the facts alleged in Crow's affidavit would not have supported a motion for new trial, even if one had been

---

**2.** *See* note 9, *infra,* for a discussion of the effect

this choice had on the resolution of Buxton's

made on this ground.[3]

Buxton argues that the district court was incorrect in its deferential review—i.e., with a presumption of correctness—of the state court's factfinding, given that there had been no live hearing in state court. He cites *Smith v. Estelle*, 711 F.2d 677 (5th Cir.1983), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984), to support his position that when no live hearing is held in the state court, and the motion is instead determined on the basis of affidavits, a presumption of correctness will not arise under 28 U.S.C. § 2254 unless—as in *Smith*—the affidavits are "uncontradicted in their particulars." 711 F.2d at 682. Buxton argues that because in this case the affidavits were contradictory, the absence of a live evidentiary hearing in the state court should force the district court to review the findings more critically.

Buxton's argument must be analyzed within the framework of the federal habeas

habeas claim.

statute.[4] The general requirements set forth in the statute—that a state court after a hearing made a determination in a proceeding to which the petitioner and the state were parties, and the determination is evidenced by a written finding—are clearly met here. However, the statute also sets forth eight circumstances under which a state court's factfinding which otherwise comports with the statute will not enjoy a presumption of correctness. Among these the pertinent exception is "(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing." 28 U.S.C. § 2254(d)(2). That is, if the federal district court determines that the state court's procedure did not provide for a "full and fair hearing," the district court would be forced to hold an evidentiary hearing of its own.[5]

The state court's procedure we are scrutinizing here was, as we noted above, conducted by the court which had originally

3. Buxton's counsel did make a motion for new trial, but did not assert this ground in support of the motion.

4. 28 U.S.C. § 2254(d) reads as follows:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant *for the writ and the State or an officer . or agent thereof were parties*, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by *the State court was not adequate to af-*ford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

5. *See* advisory committee note to Rules Governing § 2254 cases, rule 8, 28 foll. § 2254 (1977).

convicted and sentenced Buxton. That court entered written factfindings on the habeas petition, without holding a live evidentiary hearing. The court stated that it had "considered the application for writ of habeas corpus, the additional pleadings filed herein and official court records in the ... case." After that consideration, the court concluded that there was no need for a live hearing, and it entered its findings. In factfinding number 9 the court stated: "The Court finds that the facts asserted in Mr. Crow's affidavit are true...." Thus, the state court clearly made a credibility choice between the Crow and the Carr–Fitzgerald affidavits, at least to the extent that those affidavits were contradictory. Therefore, the issue presented here is whether the state trial court provided Buxton with a hearing to determine the validity of his ineffective assistance of counsel claim, based on his counsel's failure to move for a new trial because of jury misconduct, which was adequate to satisfy the requirements of section 2254(d)(2). We conclude that the state court factfinding procedure here was adequate under the circumstances to provide for a full and fair hearing within the meaning of section 2254(d)(2).

We begin our consideration of this question with an examination of *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In *Sumner*, Mata appealed his state court conviction to the California Court of Appeal, alleging for the first time on appeal that the pretrial photographic identification used by the state police was violative of his due process right. The state court of appeal rejected his contention after a review of the record, stating in its findings with respect to the identification procedures that there had been no showing of undue influence on the witnesses by the police, that the witnesses had had adequate opportunity to view the crime, and that their descriptions had been accurate. Mata subsequently filed a petition for a writ of habeas corpus in the state court, resulting in a denial of relief by the trial court, the court of appeal, and the California Supreme Court. Mata then turned to the federal district court for ha-

beas relief. The district court denied the writ, and Mata appealed. The Ninth Circuit reversed. Without mentioning section 2254(d), the circuit court found that there had been considerable pressure exerted on the witnesses by prison officials, that the witnesses' observation of the crime was such that there was a serious likelihood of misidentification, and that the witnesses' descriptions had not been adequately detailed. 449 U.S. at 541–43, 101 S.Ct. at 766–67. The Supreme Court vacated the Ninth Circuit's opinion. The Court held that the Ninth Circuit's failure to indicate which of the circumstances enumerated in section 2254(d) was present that allowed it to disregard the presumption of correctness ordinarily granted state court factfindings was fatal. It remanded the case for consideration of section 2254(d).

■ The Supreme Court makes clear in its opinion that although the factfinding at issue was made by an appellate court, on the basis of the record, that court "clearly held a 'hearing' within the meaning of § 2254(d)." 449 U.S. at 546, 101 S.Ct. at 768. It goes on to say:

Section 2254(d) applies to cases in which a state court of competent jurisdiction has made "a determination after a hearing on the merits of a factual issue." ... [It does not] specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia."

*Id.* at 546–47, 101 S.Ct. at 768–69 (quoting 28 U.S.C. § 2254(d)). Thus, *Sumner* teaches that "hearing" as it is used in section 2254(d) does not necessarily require an evidentiary hearing and that factfinding based on a record can in some circumstances be adequate.

■ In *Smith v. Estelle*, 711 F.2d 677 (5th Cir.1983), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984), we considered a similar contention that a hear-

ing by affidavit was not adequate under section 2254(d). In *Smith*, the petitioner filed an affidavit with his state court habeas petition alleging mostly "broad and general" facts indicating that his attorney had failed to provide him with effective assistance. *Id.* at 682. Smith's attorney also filed an affidavit setting forth facts, "for the most part ... uncontradicted in their particulars by Smith's affidavit," indicating the actions he had taken in representing Smith. *Id.*

The state habeas court entered written factfindings, clearly making credibility determinations in favor of Smith's attorney and adverse to Smith. *Id.* at 681. We deferred to the state court's factfindings, holding that "the term 'hearing' is not necessarily equal to the term 'evidentiary hearing.'" *Id.* (quoting *Camarillo v. Estelle*, 670 F.2d 473, 475 (5th Cir.1981)). We pointed out that the requirements enumerated in *Sumner* for a hearing—that the habeas applicant and the state be parties to the proceeding and that a written finding be entered—were satisfied, and we rejected Smith's contention that the required hearing must necessarily include an opportunity to present live testimony or be subject to cross examination.[6]

In *Evans v. McCotter*, 805 F.2d 1210 (5th Cir.1986), we reaffirmed the concept that a hearing by affidavit may be adequate under section 2254(d)(2). The fact issue asserted in *Evans* was the insanity of the petitioner, and the affidavits submitted by the petitioner and the state directly contradicted one another. The affidavit submitted by the petitioner was sworn to by his sister and simply asserted her opinion that the petitioner was "insane and incompetent." In its response, the state filed four more detailed affidavits of personnel of the Texas Department of Corrections, each of which asserted that petitioner was not insane. Additionally, the state submitted a psychological evaluation of the petitioner which concluded that he was sane. We held first that the affidavit submitted by the petitioner was too conclusory and thus not adequate to raise a fact question as to his sanity. *Id.* at 1214. As an alternate ground for our decision, we held that the factfinding procedure—a hearing by affidavit—had been adequate and "there [was] no necessity or warrant for an evidentiary hearing in the federal district court." We reasoned, citing *Sumner* and *Smith v. Estelle*, that the state court's procedure for determining the petitioner's sanity was adequate under the circumstances and section 2254(d). *Id.*

*Uresti v. Lynaugh*, 821 F.2d 1099 (5th Cir.1987), also considers the question of when factfindings are the product of a full and fair hearing and therefore entitled to a presumption of correctness under section 2254(d). In *Uresti*, the petitioner pleaded facts tending to show that he received ineffective assistance of counsel on his guilty plea. In response, the state filed an affidavit of Uresti's trial counsel concerning the facts of his representation of Uresti. The state court entered findings of fact based in part on this affidavit, rejecting many of petitioner's contentions. Again citing *Sumner* and *Smith v. Estelle*, we held that the "state court's hearing by affidavit was sufficient to invoke the presumption [of correctness]." *Id.* at 1101.

We recognize that there are cases which hold that a state factfinding was inadequate to invoke the presumption of correctness in certain situations when that factfinding was based on affidavits alone. For example, in *Campbell v. Minnesota*, the Eighth Circuit held that the district court had erred in relying on affidavits submitted to the state appellate court to resolve a factual dispute, 487 F.2d 1, 4 (8th Cir.1973). In his state criminal proceedings, Campbell disputed the legality of the search which produced evidence on which his conviction was obtained. The Minnesota Supreme Court held that the search had been legal,

---

6. In *Smith*, we went on to examine the trial court record for evidence of ineffective assistance, and we found that it also supported our holding that the state court factfinding should be presumed correct. This was made necessary by section 2254(d)(8) which provides an exception to the presumption of correctness if the factual determination "is not fairly supported by the record."

based on its conclusion that there had been probable cause to issue the warrant. That conclusion was, in turn, based in part on an affidavit submitted by a police department detective. On habeas review, the federal district court held that the evidence had been legally obtained. The Eighth Circuit reversed, holding that where there is a substantially disputed question of fact, a factfinding procedure based on affidavits alone does not afford the petitioner a full and fair hearing. The court therefore remanded for an evidentiary hearing on the question.

Further, in *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), *overruled in part on other grounds, Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987), the Supreme Court noted that there could be circumstances under which a state appellate court could not make factfindings adequate to satisfy section 2254(d)(2) based on a paper record. 474 U.S. at 388 n. 5, 106 S.Ct. at 698 n. 5. The court discusses the possibility that an appellate court might be forced to make an *Enmund*[7] determination of whether a particular defendant killed, attempted to kill, or intended to kill on the basis of a paper record alone:

> There might be instances, however, in which the presumption would not apply to appellate factfinding regarding the *Enmund* criteria because appellate factfinding procedures were not "adequate," see 28 U.S.C. § 2254(d)(2). For example, the question whether the defendant killed, attempted to kill, or intended to kill might in a given case turn on credibility determinations that could not be accurately made by an appellate court on the basis of a paper record.

*Id.* (citations omitted). The Court in *Cabana* was concerned with, inter alia, whether a jury was the only factfinder competent to make the *Enmund* determination. The Court held that it was not, and that a habeas court, when faced with an *Enmund* claim, must examine all of the state court proceedings, not simply the jury instructions and verdict, to determine if an *Enmund* finding had been made at any point. The footnote, then, discusses when a state appellate court factfinding made on the basis of a paper record, might not merit a presumption of correctness in the federal habeas court.[8]

This footnote in *Cabana* guides our inquiry into when factfinding procedures will not be adequate to merit the presumption of correctness, but it does not change our disposition. Unlike the hypothetical situation posited in the footnote, we are not reviewing a factfinding made by a state appellate court on the basis of a paper record. Rather, this is a decision made by the trial court that conducted Buxton's trial and sentenced him. The judge before whom Buxton was tried was in a different and better position to make determinations regarding the facts and circumstances surrounding that trial than other courts on direct or collateral review. The trial judge had the opportunity to watch the trial as it progressed, he saw both Crow and Carr–Fitzgerald in action, and he was familiar with the jury. He had knowledge of the configuration of the courthouse, of where the jury room was, and of whether a comment made by a juror in that room could be inadvertently overheard. Further, the trial judge may have developed a respect for Carr–Fitzgerald's competence that would give him pause to wonder why *she* failed to move for a mistrial on the ground of jury misconduct at the time, if the evidence she gives now is true. As a federal court in collateral review, we are far removed from

---

7. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (eighth amendment forbids the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.") *Id.* at 797, 102 S.Ct. at 3376.

8. The hypothetical situation proposed in this footnote has at least once been realized. In *Hyman v. Aiken*, 824 F.2d 1405 (4th Cir.1987), the Fourth Circuit followed the footnote to hold that neither the state appellate court's, nor the state post-conviction court's *Enmund* findings merited a presumption of correctness given that they were based on credibility determinations made on the basis of the record.

the trial proceedings and therefore defer to the trial court's determination of the facts surrounding that trial.

Moreover, in cases of federal review of state trial proceedings, there are considerations of comity that militate against federal courts reviewing factfindings with a less deferential standard. As the Supreme Court in *Sumner* stated,

Federal habeas has been a source of friction between state and federal courts, and Congress obviously meant to alleviate some of that friction when it enacted subsection (d) in 1966 as an amendment to the original Federal Habeas Act of 1867. Accordingly, some content must be given to the provisions of the subsection if the will of Congress be not frustrated.... A writ issued at the behest of a petitioner under 28 U.S.C. § 2254 is in effect overturning either the factual or legal conclusions reached by the state-court system under the judgment of which the petitioner stands convicted, and friction is a likely result.

*Sumner*, 449 U.S. at 550, 101 S.Ct. at 770. While we are mindful of our obligation to protect a state prisoner against violations of his federal constitutional rights through habeas corpus, we must also keep federalism in mind, and maintain a high level of caution when reviewing the proceedings of a state court. Therefore, we agree with the district court's application of the presumption of correctness, and we find no evidence to rebut that presumption here. We therefore conclude that the statements in the Crow affidavit are true.

### B. The Legal Conclusions

■ The application of the presumption of correctness to the state court factfindings has, of course, no effect on our review of the legal conclusions reached on the basis of those facts—we, as always, subject the legal conclusions to *de novo* review.

After such a review, we agree with the conclusion that, according to Texas law, juror misconduct cannot be found on the facts as found here.

Under Texas law, to make a showing of juror misconduct, the petitioner must show "(1) juror misconduct that (2) deprived him of a fair and impartial trial." *Vorwerk v. State*, 735 S.W.2d 672, 673 (Tex.App.—Austin 1987). When, as here, the alleged misconduct consists of improper consideration of punishment during deliberation on guilt/innocence, under Texas law the petitioner must show not simply that punishment was discussed in the guilt/innocence phase, but also that "members of the jury *[made] an agreement* to render a guilty verdict in exchange for a lighter punishment." *Id.* at 674 (emphasis in original). Even in the event the jurors concede that leniency was discussed during guilt/innocence deliberations, in the absence of a resulting *agreement*, juror misconduct has not been found. *Daniels v. State*, 600 S.W.2d 813, 816 (Tex.Cr.App.1980). The most that we can conclude from the facts found here is that a juror may have had some doubt about Buxton's guilt during the course of the proceedings. This would certainly not suffice to support a successful motion for new trial, nor would it even require that the court grant an evidentiary hearing on the question. *See McIntire v. State*, 698 S.W.2d 652, 658 & n. 12 (Tex.Cr.App.1985).[9] Thus, the second prong of the *Strickland* standard for ineffective assistance, which requires the petitioner to show that the failure of his counsel caused the petitioner to suffer prejudice, has not been met.

### III. McCLESKEY CLAIM

■ Buxton's second argument is that the Texas capital sentencing scheme is unconstitutional.[10] His argument was origi-

---

9. If, however, the facts as alleged in the Carr–Fitzgerald affidavit had been believed, there is a strong possibility that a Texas court would have granted an evidentiary hearing on the question of jury misconduct. *McIntire*, 698 S.W.2d at 658–59; *Dugard v. State*, 688 S.W.2d 524, 528–29 (Tex.Cr.App.1985).

10. Buxton first raised this argument in his Amended Application for a Writ of Habeas Corpus in the state trial court. He framed the claim as follows:

The Texas capital murder scheme is unconstitutional as written and as applied because it operates in such a way as to allow intentional

nally framed to raise a *McCleskey* issue: Buxton is black, his victim was white, and the Texas scheme is insufficient, according to statistical studies, to prevent racially discriminatory results. *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). However, since Buxton's original petition was filed, the Supreme Court has decided *McCleskey* in a way, Buxton concedes, unfavorable to his claim.[11] Buxton argues, nevertheless, that he raised, "however inartfully," the issue of whether mitigating evidence can be considered under the Texas scheme of capital sentencing, one of the issues addressed by the Supreme Court in *Penry v. Lynaugh*, — U.S. —, 109 S.Ct. 2934, 106 L.Ed. 2d 256 (1988). His reasoning for this hinges on two points. The first is that his original habeas petition generally questioned the constitutionality of the Texas sentencing statute. The second is that in his original habeas petition, he cited *Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir.1985) (en banc), a case in which the Supreme Court has since held that the jury at the sentencing phase of a capital case must be allowed to consider all relevant mitigating evidence. *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). However, the Supreme Court noted in its opinion in *Hitchcock* that it had granted certiorari on the "petitioner's claim that the Florida death penalty statute discriminates against capital defendants who murder whites and against black capital defendants, in violation of the Eighth and Fourteenth Amendments." *Id.* at 394 n. 1, 107 S.Ct. at 1822 n. 1. Buxton's citation to *Hitchcock* in his original habeas petition merely states: "[t]his case raises the issue of the effect on Texas death penalty convic-

tions of the United States Supreme Court's grant of certiorari in *Hitchcock v. Wainwright....*" Thus, it is evident from Buxton's petition, as well as from the district court's findings of fact and conclusions of law on that petition,[12] that the flaw in the capital sentencing scheme Buxton presented and argued was racially discriminatory results, not failure to provide an opportunity to consider mitigating evidence. The only fair reading of Buxton's citation of *Hitchcock*, then, is in further support of his *McCleskey* claim, not as raising a claim regarding mitigating evidence. Thus, we find that the *Penry* claim was not raised in the court below, and we will therefore not address it for the first time on appeal. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir.1988) (refusal to consider *Penry* claim made for first time on appeal), *cert. denied*, — U.S. —, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989); *Fransaw v. Lynaugh*, 810 F.2d 518, 523 (5th Cir.), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987).

## IV.

For the above reasons, the district court's order denying the petition for a writ of habeas corpus is AFFIRMED, and Buxton's petition for a stay of execution is DENIED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

A state judge, confronted with the mutually contradictory affidavits of two witnesses concerning a crucial fact, decided that one witness was credible and the other was not without hearing either witness' testimony or affording counsel the opportunity to confront and cross-examine them. The ma-

---

racial discrimination against a defendant who is a member of a racial minority accused of killing a person who is a member of the racial majority. The arbitrary functioning of the system violates due process and equal protection guarantees of the federal and state constitutions and constitutes cruel and unusual punishment in violation of federal and state constitutions.

**11.** The Supreme Court held in *McCleskey*, inter alia, that statistical evidence alone—i.e., without

evidence specific to the case at hand—of racially discriminatory purpose will not suffice to support an inference that the decision makers acted with discriminatory purpose.

**12.** The district court restated Buxton's constitutional challenge to the Texas sentencing scheme as urging: "The Texas capital murder scheme is unconstitutional because of its disproportionate effects." It at no point in its findings and conclusions mentions mitigating evidence.

jority concludes that this decision, on the basis of which the state judge denied the petitioner relief from a death sentence, was made after a "full and fair hearing." [1] In a simple tort case involving only damages, let alone a case in which a man's life is at stake, controverted material facts would not be decided in such a truncated fashion. Because the judge's reading of the affidavits, without appearance by the witnesses or examination by counsel, does not provide the full and fair hearing that the habeas corpus statute commands as a prerequisite to crediting the state court's judgment, I respectfully dissent from Part II of the opinion and from the judgment.

It is undisputed that Carr–Fitzgerald and Crow, Buxton's trial co-counsel, submitted affidavits to the state court containing contradictory factual accounts. Carr–Fitzgerald swore in her affidavit that a juror had "conceded (paraphrase) his vote during the guilt phase of the trial when he did not feel the defendant was guilty contingent on the agreement by the other jurors that the death penalty would not be imposed by their vote." Crow swore that Carr–Fitzgerald *later told* him that she had overheard one juror tell another: " 'Hell, I didn't even believe he was guilty and now you want me to kill him?' "

Without hearing the testimony of either witness, the state court credited Crow's affidavit, and found that no juror misconduct had occurred under the facts Crow asserted. The federal district court presumed that the state court's accreditation of Crow's affidavit was correct, pursuant to 28 U.S.C. § 2254(d), and affirmed the state court's denial of Buxton's claim for ineffective assistance of counsel for failure to challenge the juror misconduct. Were

the state court to have credited Carr–Fitzgerald's affidavit, the majority acknowledges, "there is a strong possibility that a Texas court would have granted an evidentiary hearing on the question of juror misconduct," since members of the jury would have violated Texas law by *mak[ing] an agreement* to render a guilty verdict in exchange for a lighter punishment." [2]

When reviewing the application of a habeas petitioner convicted in state court, a federal court presumes that the state court's determination of a factual issue after a hearing on its merits is correct "unless the applicant shall establish ... that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing." [3] If the district court determines that the state court's procedure did not provide for a full and fair hearing, the district court holds its own evidentiary hearing.[4]

The majority correctly holds that "factfinding based [solely] on a record can in *some* circumstances be adequate" (emphasis supplied). In cases in which the historical facts are not in dispute and there are no conflicting affidavits, both the Supreme Court [5] and this court [6] have held that a state court's fact-finding procedures may afford a full and fair hearing without personal testimony and examination of witnesses.

When affiants have sworn to conflicting affidavits placing historical facts in dispute, however, a trial judge is unable to make an informed judgment that one affiant is more credible than the other solely on the basis of the contradictory affidavits. Every practitioner knows that it is easy to

---

1. 28 U.S.C. § 2254(d)(2) (1977).

2. *Vorwerk v. State,* 735 S.W.2d 672, 674 (Tex. App.—Austin 1987) (emphasis in original); *see Daniels v. State,* 600 S.W.2d 813, 816 (Tex.Cr. App.1980).

3. 28 U.S.C. § 2254(d)(2) (1977).

4. *See* Advisory Committee Note to Rules Governing 28 U.S.C. § 2254 cases, Rule 8, 28 foll. § 2254 (1977).

5. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *cf. Cabana v. Bull-*

ock, 474 U.S. 376, 388 n. 5, 106 S.Ct. 689, 698 n. 5, 88 L.Ed.2d 704 (1986), *overruled in part on other grounds, Pope v. Illinois,* 481 U.S. 497, 503 n. 7, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987).

6. *See Uresti v. Lynaugh,* 821 F.2d 1099 (5th Cir. 1987); *Smith v. Estelle,* 711 F.2d 677 (5th Cir. 1983), *cert. denied,* 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984); *cf. Camarillo v. Estelle,* 670 F.2d 473 (5th Cir.1981).

obtain a witness' signature on an affidavit prepared by a lawyer: how facilely the lawyer's narrative spills from the word processor; how readily the affiant puts pen to paper. Every practitioner also knows how often the lawyer's version of events crumbles when the witness is called to testify and is cross-examined on his personal knowledge of events.

A judge, like a juror, determines facts from contradictory witnesses by assessing each witness' credibility. This determination is based not only on each witness' testimony in court before the judge, which may differ substantially from the affiant's statement on a piece of paper, but is informed by the judge's observation of the witness' demeanor on direct and cross-examination. The rigors of a "live" evidentiary hearing thus not only enhance the likelihood that a witness testifies truthfully, but enable a fact-finder to conclude from personal observation of each witness' behavior that one witness is truthful and the other mendacious. Because Buxton was not afforded the opportunity to "present relevant evidence and rebut the evidence of the opposition,"[7] and the judge did not have a chance to assess either witness' credibility during direct and cross-examination, the state court's fact-finding procedures were inadequate and failed to provide Buxton with a "full and fair" hearing under § 2254(d)(2).[8] It is, indeed, ironic that the state court credited Crow's affidavit which contained only second-hand hearsay—what Carr–Fitzgerald allegedly told him—over Carr–Fitzgerald's first-hand account.

To support its conclusion that the state court's fact-finding procedure was adequate, the majority relies on our decision in *Evans v. McCotter*.[9] In *Evans*, we "assum[ed] *arguendo*" that a state trial court's determination of fact from conflicting affidavits was

> sufficient under [§ 2254(d)(2)]. *See, e.g., Sumner v. Mata, ... Smith v. Estelle, ... Camarillo v. Estelle*.[10]

In addition to the obvious fact that this portion of *Evans* is *obiter dicta*, not precedent, the three cases *Evans* cites do not support the conclusion reached by the *Evans* court and the majority in this case. In *Mata* and *Smith*, no historical facts were in dispute;[11] neither case, therefore, addresses whether a hearing may be considered full and fair when a court determines controverted facts on the basis of conflicting affidavits. In *Camarillo*, we actually "remanded for an evidentiary hearing" because the "prisoner's right to relief turn[ed] on facts which [we]re in dispute."[12]

Having no precedential support, the majority ultimately roots its opinion on the ground that the state trial judge who credited Crow's affidavit was the judge who had tried Buxton and, therefore, "saw both Crow and Carr–Fitzgerald in action" and "may have developed" more "respect" for one attorney than the other. A judge's familiarity with attorneys practicing before him does not, however, establish his ability to ascertain their credibility as affiants, and takes no account of the effect of direct and cross-examination on testimony. The credibility of a lawyer retained to represent an individual in court, *qua* counsel, is vastly different from the trustworthiness of an individual testifying about historical facts. The lawyer is an agent, an adversary, an attorney at law, and, except for unusual circumstances, may not be a witness in a cause in which he is counsel.[13] A witness, in contrast, speaks on his own behalf, swears that his testimony is true, and his factual averments are subject to the scruti-

7. *Campbell v. Minnesota*, 487 F.2d 1, 4 (8th Cir.1973) (footnote omitted).

8. *Ibid.*

9. 805 F.2d 1210 (5th Cir.1986).

10. *Id.* at 1214.

11. *See Mata*, 449 U.S. at 543, 101 S.Ct. at 767; *Smith*, 711 F.2d at 682; *see also Uresti*, 821 F.2d at 1101.

12. *Camarillo*, 670 F.2d at 474.

13. *See e.g.*, ABA Model Rules of Professional Responsibility 3.7.

ny of a presiding judge, counsel, and other witnesses.

Rather than presuming that the state court's finding of fact was correct, the district court should have held its own evidentiary hearing to determine which affiant's account of events was more accurate.[14] Because the fact-finding procedure employed by the state court was not adequate to afford Buxton a full and fair hearing, I would remand the case to the district court so that it may conduct a real evidentiary hearing to determine whether the facts recited in Carr–Fitzgerald's or in Crow's affidavit are true.

14. *See Campbell,* 487 F.2d at 4 & n. 3.