**Ernest Orville BALDREE,
Petitioner–Appellant,**

v.

**Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 95–10858.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1996.

Rita Jeanne Radostitz, Austin, TX, for petitioner-appellant.

John Dury Jacks, Office of the Attorney General for the State of Texas, Austin, TX, for respondent-appellee.

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Ernest Orville Baldree requests a certificate of probable cause from this Court in order to appeal the district court's denial of his petition for writ of habeas corpus. The district court denied his request for such certificate. Because Baldree fails to overcome the presumption of correctness afforded to the state court's factfinding and, therefore, could not make a substantial showing of a denial of his federal rights, we deny Baldree's application for certificate of probable cause to appeal.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Baldree was convicted of capital murder by a jury in the 13th Judicial District Court of Navarro County, Texas, on December 8, 1986. The jury then heard testimony and considered evidence in the penalty phase of the trial. At the conclusion of this stage of the trial, the jury imposed the death penalty. The Texas Court of Criminal Appeals affirmed Baldree's conviction and sentence, and the United States Supreme Court denied a subsequent petition for writ of certiorari from that decision. *Baldree v. State*, 784

S.W.2d 676 (Tex.Crim.App.1989) (en banc), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990). Baldree then filed two separate state court habeas petitions under TEX.CODE CRIM.PROC.ANN. art. 11.07 (Vernon 1989). The factfinding judge for these state habeas petitions was also the judge who presided over Baldree's trial. Both of Baldree's state habeas petitions were unsuccessful.[1]

On November 8, 1991, Baldree filed his first federal petition for writ of habeas corpus and application for stay of execution in the United States District Court for the Northern District of Texas. The district court granted a stay of execution. The district court then referred the writ of habeas corpus to a magistrate judge. The magistrate judge issued findings and conclusions, and recommended that the certificate of probable cause and the writ of habeas corpus be denied. The district court adopted the recommendations of the magistrate judge. Baldree then appealed to this Court, where he argues that the district court erred in failing to order an evidentiary hearing on four claims: (1) the prosecution's alleged suppression of exculpatory evidence; (2) the prosecution's alleged knowing presentation of false testimony; (3) the alleged violation of Baldree's right to counsel in connection with a confession obtained by a fellow inmate; and (4) alleged violations of constitutional rights in connection with Baldree's oral confession to police.

## II. DISCUSSION

A petitioner must first obtain a certificate of probable cause in order for jurisdiction to vest with this Court. *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir.1996). To obtain a certificate of probable cause, the petitioner must make a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 892, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (internal quotations and citations omitted). To satisfy this requirement, petitioner "must demonstrate that the issues are debatable among jurists

---

1. *See Ex Parte Baldree*, 810 S.W.2d 213 (Tex. Crim.App.1991). The second state habeas petition was denied in an unpublished opinion.

of reason; that a court *could* resolve the issues in a different manner; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4 (emphasis original) (quoting *Gordon v. Willis,* 516 F.Supp. 911, 913 (N.D.Ga.1980)).

Baldree filed his application for certificate of probable cause in this case prior to April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, tit. I, § 104 (to be codified at 28 U.S.C. § 2254(e) (1996)). At oral argument, the state indicated that the AEDPA would apply to this case but that nothing in the new law was necessary to sustain the action of the district court in this case. If anything, the state contends that the requirements of the new law may be more stringent than the old law; but it is unnecessary for the Court to decide which law applies in this case. *See Drinkard v. Johnson,* 97 F.3d 751, 755–57 (5th Cir.1996) (recognizing that the standards for obtaining a Certificate of Probable Cause and a Certificate of Appealability are the same and, therefore, applying § 102 of the AEDPA retroactively).

Baldree's application for a certificate of probable cause raises four issues. First, Baldree argues that the state court's factfinding procedure was not adequate to invoke the presumption of correctness afforded to state court factfindings under 28 U.S.C. § 2254(d)(2).[2] Second, Baldree maintains that he was denied a full and fair hearing in accordance with 28 U.S.C. § 2254(d)(6). Third, Baldree contends that he was denied due process of law in his state habeas proceeding in violation of 28 U.S.C. § 2254(d)(7). Baldree argues that a favorable resolution of these issues would be dispositive of all his claims. Finally, assuming this Court issues the certificate of probable cause, Baldree contends that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not bar relief concerning his claims.[3]

The propriety of Baldree's application for certificate of probable cause to appeal rests primarily upon three witnesses, Carl White, and Kyle Barnett, who testified for the State at trial, and Larry Bevers, who was a witness for the State but did not testify. These individuals later submitted affidavits which recanted their trial testimony and prior written statements. The new affidavits were relied upon by Baldree in his second state habeas proceeding. The affidavits allege that the police used coercion and threats which effectively forced these witnesses to testify against Baldree at trial. Baldree contends that sections 2254(d)(2), (6), (7) and (8) were violated because no hearing or discovery was allowed whereby he could further develop the facts surrounding the police coercion and misconduct alleged in the new affidavits.

Carl White was arrested on the same day as Baldree. White testified at trial that Baldree told him that he had killed two people. White also provided a written statement to the police which set-out Baldree's statements to White in some detail. Baldree's application relies on White's new affidavit which recants his prior testimony. White now contends that the police strongly hinted that he would be indicted under more serious charges if he did not testify against Baldree. White further states that Baldree never told him anything about killing anyone.

Kyle Barnett and Larry Bevers also allegedly signed new affidavits stating that the police used coercion by physical threats and threats of adding more serious charges to their indictments to force them to testify against Baldree. Barnett was incarcerated with Baldree at the Navarro County jail. He testified at trial that Baldree admitted to murdering the Howards. Barnett's new affidavit alleges that law enforcement agents promised him lenient treatment in a parole revocation hearing if he could induce Baldree to incriminate himself.

Bevers was a potential witness who was not called to testify. However, he did sign a written statement explaining how he pur-

---

**2.** Statutory references herein are to the prior law.

**3.** Because we affirm the district court's judgment denying the certificate of probable cause, it is not necessary to assess the validity of this claim.

chased various pieces of jewelry from Baldree. Bevers' statement also explained that, while he was buying jewelry from Baldree at a hotel, Baldree also attempted to sell him a white Cadillac which was parked in the hotel parking lot. The description of the Cadillac matched the description of the Cadillac taken from the Howards' home. Bevers' new affidavit explained that Billy Dunn had sold the jewelry to him and that he had never seen a white Cadillac at the hotel. The new affidavit also stated that the detectives threatened Bevers and kept harassing him until he signed a written statement that they had prepared.

In response, the State submitted affidavits of Patrick Batchelor, the Criminal District Attorney for Navarro County; John Jackson, the Assistant Criminal District Attorney for Navarro County in charge of Baldree's capital murder prosecution; and Officer Leslie Cotten, the detective in charge of the investigation into the Howard murders for Navarro County. These affidavits told a different story which contradicted the tales told by White, Bevers and Barnett in their new affidavits.

The state district court chose to credit the State's affiants and denied Baldree's habeas petition without holding a hearing. 28 U.S.C. § 2254(d) requires that a federal district court afford a presumption of correctness to the state court findings of fact which are:

> evidenced by a written finding, written opinion, or other reliable and adequate written indicia, ... unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> \*   \*   \*   \*   \*   \*
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
>
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding....

Baldree relies primarily upon the exception in § 2254(d)(2), contending that the state court order, containing the findings relied upon in this case, was issued on the same day that the State filed its response to Baldree's second state habeas petition, without affording Baldree with an opportunity to respond. Baldree maintains that the affidavits of Bevers, Barnett and White show that the State knowingly presented false and misleading testimony in violation of *Napue v. Illinois*.[4] Baldree also contends that these affidavits show that the State failed to disclose evidence relevant to the credibility of State witnesses in violation of *Giglio*[5] and *Brady*.[6] Baldree also argues that the district court should have granted the certificate of probable cause to appeal and the writ of habeas corpus because Barnett's affidavit shows that the State improperly used him as an undisclosed informant in violation of *Massiah*.[7] Finally, Baldree contends that the federal district court improperly applied the presumption of correctness to the state court's findings that his confession was voluntary. Because the affidavits shed light on the police misconduct that occurred in this case, Baldree contends that the federal district court should have held a hearing to test the validity of the state court's findings that his confession was voluntary.

■ In its order, the state district court explained that "Petitioner has failed to demonstrate that during the trial the State's attorney presented to the jury any false or coerced testimony from Kyle Barnett or Carl White." The state trial court also noted that Baldree failed to show that the State's attorney or law enforcement officers had exercised any form of threat or coercion to obtain the testimony or statements of Carl White. In essence, the State court chose to credit the affidavits presented by the State and relied on the prior trial testimony of the

---

**4.** 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

**5.** *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972).

**6.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**7.** *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

defense witnesses to determine that these claims of police coercion were unfounded. Baldree, however, contends that, because there was no hearing, he could not further develop the facts to show that the testimony of these witnesses were procured using improper tactics.

A factually similar case was resolved by this Court in *Buxton v. Lynaugh*, 879 F.2d 140, 142–46 (5th Cir.1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). In *Buxton*, the petitioner filed an affidavit of one of his state trial attorneys. The affidavit alleged that juror misconduct occurred. In its response, the State submitted an affidavit of another trial attorney for the petitioner which contradicted the story in the affidavit presented by petitioner. In the state habeas proceeding, the state district court made credibility determinations and entered findings which credited the affidavit presented by the State. In the subsequent federal habeas petition, we agreed with the federal district court's application of the presumption of correctness to the state court factfindings and found that the factfinding procedure was adequate to afford the petitioner a full and fair hearing. *Id.* at 144. We reached this decision by relying on the fact that the state judge, who reviewed the affidavits relating to the state habeas petition, was the same state judge who presided over petitioner's trial and sentencing. *Id.* at 146. We reasoned that when a state trial judge is also the judge hearing the state habeas claim, that judge is in an optimal position to assess the credibility of the affidavits. *Id.* This is true because the state judge had the benefit of observing the witnesses and attorneys and hearing testimony at trial. The state trial judge could make credibility determinations of the affidavits based on the demeanor of the witnesses he heard at trial, without holding a separate hearing to take live testimony from the witnesses. *Buxton*, 879 F.2d at 146. In the subsequent federal habeas petition, we held that the state court's factfindings on this type of "paper record" were entitled to the presumption of correctness under 28 U.S.C. § 2254(d). *Id.* at 147.

Baldree has presented nothing to indicate that the presumption of correctness afforded to state court findings of fact under § 2254(d) should not attach to the findings in this case. In these situations, it is not necessary for us to hold a full-blown trial-type hearing to satisfy the requirements of section 2254(d). *See James v. Collins*, 987 F.2d 1116, 1122 (5th Cir.), *cert. denied*, 509 U.S. 947, 114 S.Ct. 30, 125 L.Ed.2d 780 (1993); *May v. Collins*, 955 F.2d 299, 310 (5th Cir.), *cert. denied*, 504 U.S. 901, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992). This Court has held on many occasions that a state court "paper hearing" is sufficient to allow a federal court to invoke the § 2254(d) presumption of correctness to the state court's findings when the state habeas judge also presided over the petitioner's trial. *See Perillo v. Johnson*, 79 F.3d 441, 446 (5th Cir.1996); *Vuong v. Scott*, 62 F.3d 673, 683–84 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); *Armstead v. Scott*, 37 F.3d 202, 208 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). Here, the state district court heard all the witnesses at trial and was in an optimal position to judge their demeanor and make credibility determinations.

■ Furthermore, affidavits which recant witnesses' trial testimony are viewed with extreme suspicion by the courts. *May v. Collins*, 955 F.2d at 314; *Williams v. State*, 375 S.W.2d 449, 451–52 (Tex.Crim.App.1964). As we explained in *May v. Collins*:

> The level of insulation the law grants to a skeptical trial judge's assessment of recanting affidavits reflects the notion that trial judges are in the best position to compare a witness's earlier testimony with his new version of the facts. Thus, the concerns about the inadequacy of a "trial by affidavit" are even more diminished in the context of a factual dispute rooted in witness's claims that they perjured themselves at trial.

*May*, 955 F.2d at 314–15.

The "paper hearing" Baldree received on his state habeas claim was full and fair, notwithstanding the state court's decision not to hold an evidentiary hearing to resolve disputed issues of fact. The trial judge, hav-

ing heard the testimony at trial, could determine the credibility of the new affidavits without holding a hearing as to Baldree's claims regarding the alleged suppression exculpatory evidence, presentation of false testimony, and use of a jailhouse informant. In addition, the federal district court was entitled to give the presumption of correctness to the trial court findings that Baldree's oral confession was voluntary. These findings followed an evidentiary hearing on Baldree's motion to suppress. Therefore, Baldree has failed to make a "substantial showing of the denial of a federal right."

## III. CONCLUSION

For the foregoing reasons, the application for certificate of probable cause is DENIED, and the appeal DISMISSED.