**Hai Hai VUONG**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice.**

**Civ. A. No. 1:94–cv 0228.**

United States District Court, E.D. Texas, Beaumont Division.

Nov. 8, 1994.

Gary A. Winters, Mayer Brown & Platt, Washington DC, for petitioner.

William Charles Zapalac, Asst. Atty. Gen., Austin, TX, for respondent.

## MEMORANDUM OPINION

COBB, District Judge.

Petitioner Hai Hai Vuong, an inmate confined to the Ellis I Unit of the Texas Department of Criminal Justice, Institutional Division, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a death sentence imposed by the Criminal District Court of Jefferson County, Texas.

*Factual and Procedural History*

On December 7, 1986, at approximately 6:00 p.m., petitioner was playing pool and drinking beer with Thien Huu Nguyen and Tuan Van Nguyen at the Game Room located in Port Arthur, Texas. The three left the game room to retrieve a Colt AR–15 or M–16 .223 caliber semi-automatic or automatic rifle from petitioner's home and a pistol.[1] Petitioner asserts he retrieved the weapon due to threats that had been made against him by gang members from New Orleans who were present in the Game Room, although the other witnesses did not hear any alleged threats or arguments. Petitioner returned to the Game Room approximately five to ten minutes after leaving and entered through the front door with the weapon. Nang Pham was playing pool at the first pool table in the game room. Nang Pham heard the first two shots from petitioner's weapon and lay down on the floor. The first two shots went into the rear wall of the Game Room. Petitioner told the patrons in the game room to remain where they were. The alleged gang members, according to petitioner, left through the back door after the first two shots. Petitioner shot Nang Pham in the shoulder. Nang Pham rolled under another pool table and left through the front door.

Petitioner begin to slowly walk to the back of the Game Room. Tien Van Nguyen was hiding behind one of the pool tables. Tien stood up and stated "Hai, it's me," in Vietnamese. Petitioner shot Tien in the face. Petitioner then shot Binh Nguyen in the arm when he tried to run. Luan Mien Do was shot in the back when petitioner first entered the Game Room. When petitioner walked to the rear of the game room he shot Do a second time in the arm.

Petitioner then entered a doorway that separated the Game Room from the adjoining cafe, which was part of the same business. Petitioner's friend, Thien Huu Nguyen, was standing at the door of the cafe with a pistol, attempting to block the exit of pa-trons. Petitioner walked towards a table where sixteen year old Hien Quang Tran was sitting, eating. Tran stood up and petitioner pointed his rifle at Tran and shot him in the chin, killing him. Petitioner took the telephone away from the owner of the Game Room and then left. In all, petitioner had fired at least eleven rounds of .223 ammunition in the Game Round and the adjoining cafe, killing two people and wounding three others.

When petitioner ran outside of the Game Room, he got into a blue Monte Carlo automobile which was waiting for him and Thien. The driver (Tuan Van Nguyen), Thien and petitioner then left the scene. The car was recovered later that night in Port Arthur but petitioner was not found. An arrest warrant was issued for the arrest of petitioner. Petitioner stayed in Port Arthur for a few days and then went to New Orleans, from where he traveled to California to work.

On March 26, 1987, a Jefferson County, Texas, Grand Jury indicted petitioner for the capital murder of Hien Quang Tran in the course of committing the additional murder of Tien Van Nguyen in violation of TEX.PE-NAL CODE § 19.03(a)(6)(A) (Vernons 1985), in Cause No. 48,489 styled *The State of Texas v. Hai Hai Vuong*.[2]

On July 4, 1987, Officer George Avina, California Highway Patrol, responded to a traffic accident near Salinas, California. When Officer Avina arrived, he noted petitioner and two other males with a vehicle in a field. Petitioner was severely intoxicated and stated his name was Nguyen Le. Petitioner was arrested for public intoxication. During the booking procedure, Officer Avina determined petitioner's true identity and checked his name for pending warrants. Petitioner was then extradited to Jefferson County to stand trial for the capital murder of Hien Quang Tran and Tien Van Nguyen.

On August 28, 1987, petitioner gave a statement that he had entered the Game Room and fired several shots but did not

---

1. Petitioner testified the weapon was an automatic. However, there was conflicting testimony and the weapon was not recovered.

2. TEX.PENAL CODE § 19.03(a)(6)(A) provides a person commits capital murder if "the person murders more than one person during the same criminal transaction." In 1993, the provision was renumbered to section 19.03(a)(7)(A).

remember hitting anyone. Petitioner was returned to Jefferson County, Texas. On September 8, 1987, Mr. James A. DeLee was appointed to represent petitioner.

On May 9, 1988, petitioner's trial began before a jury in the Criminal District Court of Jefferson County, Texas. Petitioner testified at the trial that he believed Tien Van Nguyen was going to pull a gun when he stood up and Hien Quang Tran pushed a table towards him. Petitioner asserted that the killing of Tien was in self-defense and the killing of Hien was accidental. The jury convicted petitioner of the capital murder of Hien, enhanced with the murder of Tien. After hearing further testimony, including that of Dr. James Grigson, the jury answered all three special issue questions of TEX.CODE OF CRIM.PROCEDURE art. 37.071 (Vernons 1985) affirmatively. The trial court sentenced petitioner to death by lethal injection.

The Texas Court of Criminal Appeals affirmed the conviction on direct appeal. *Vuong v. State,* 830 S.W.2d 929 (Tex.Crim. App.1992). The Supreme Court denied a petition for writ of certiorari. *Vuong v. State,* — U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). The trial court then scheduled petitioner's execution on January 6, 1993.

Petitioner filed a petition for writ of habeas corpus in this court on January 5, 1993. *Vuong v. Director,* 1:93cv002. This court appointed counsel for petitioner, and allowed ninety days to file an amended petition. Subsequent to the amended petition, this court granted the respondent's motion to dismiss the petition to allow petitioner to exhaust the eight claims presented in the state courts.

The trial court scheduled petitioner's execution for April 26, 1994. Petitioner filed an application for writ of habeas corpus in the state court and a motion to recuse the state court trial judge. A visiting state court judge held a hearing on the motion to recuse the trial judge, and the motion was denied. The trial court ordered the parties to submit affidavits concerning the factual issues presented by the claims. The trial court entered factual findings. The Texas Court of Criminal Appeals denied the application based upon the trial court's findings on April 25, 1994. *Ex part Vuong,* No. 26,391–01. The petitioner submitted the current petition for writ of habeas corpus on April 25, 1994.[3] This court entered a stay of execution and ordered the state to respond to the current petition. The state filed a response on August 8, 1994. The petitioner responded to the state's answer on August 29, 1994, and submitted a motion for an evidentiary hearing.

### *The Petition*

Petitioner brings eight claims in the current petition. These are:

1. The jury was not provided a vehicle to consider the mitigating effect of the provocation of the second victim, Tien Van Nguyen.

2. The trial court deprived petitioner of his Sixth Amendment right to counsel when it gave an *ex parte* instruction to the jury on parole law during the punishment phase.

3. Appellate counsel was ineffective for failing to raise the alleged *ex parte* communication issue.

4. If counsel was aware of the *ex parte* communication, then petitioner received ineffective assistance of counsel for counsel's failure to object to the parole instruction.

5. The "key man" system of grand jury instruction employed in Jefferson County prior to 1991 deprived petitioner of equal protection and due process.

6. Dr. Grigson presented false testimony which the state knew to be false.

7. Even if the state was not aware that Dr. Grigson's testimony was false, the use of the perjured testimony amounted to cruel and unusual punishment in violation of the Eighth Amendment.

8. The trial court improperly excluded venire member Harold Gauthier for cause.

---

**3.** The petition presents the same claims presented in the first petition, all of which have been exhausted before the state courts.

## Analysis

### A. Need for an Evidentiary Hearing

Petitioner is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice that resulted from that failure. *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992). In petitioner's case, the trial court, and the visiting state judge, held both a live hearing, and one by way of affidavits on the factual issues presented. These findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). A hearing by affidavit is sufficient to invoke the presumption of correctness. *Buxton v. Lynaugh,* 879 F.2d 140, 144 (5th Cir.), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990).

Having reviewed the trial court's factual findings and determined that the findings are fairly supported by the record, the court will deny petitioner's motion for an evidentiary hearing.

### B. Merits of the Claims

#### 1. SECOND VICTIM MITIGATION

At the time petitioner went to trial, TEX. CODE CRIM.PROC.ANN. art. 37.071(f) provided:

If a defendant is convicted of an offense under section 19.03(a)(6), Penal Code, the court shall submit the three issues under Subsection (b) of this article only with regard to the conduct of the defendant in murdering the deceased individual first named in the indictment.

Thus, theoretically, the jury could consider in mitigation the provocation of only the first victim named in the indictment. The Texas Court of Criminal Appeals recognized the flaw of this scheme in *First v. State,* 846 S.W.2d 836 (Tex.Crim.App.1992). In *First* the defendant was convicted of capital murder after killing two people during the same criminal transaction. The evidence demonstrated that the victim named first in the indictment did not provoke the defendant. However, the remaining victim had beaten the defendant rather severely shortly before he killed both victims. The Texas Court of Criminal Appeals held that this limitation on issues of mitigation violated the Eighth and Fourteenth Amendments. *Id.* 846 S.W.2d at 841.

Petitioner's argument is the same as that proffered in *First.* Petitioner claims that article 37.071(f) did not allow the jury to consider in mitigation the provocation by Tien Van Nguyen. However, petitioner's facts are inapposite those found in *First.* Petitioner asserts he was provoked by alleged gang members from New Orleans. These alleged gang members left through the back door after the first two shots, according to petitioner. This left petitioner with a game room and cafe packed with innocent persons who had done nothing to petitioner except call him a friend prior to the incident. When Tien stood up and said "Hai, it's me," he was shot in the face. Petitioner asserts Tien was reaching for a pistol which he allegedly always carried, although there was no other testimony to support this allegation. There was no pistol found and there was no testimony to support petitioner's trial version of the incident.[4] Thus, under the third punishment issue, the provocation was not raised by the evidence.

The Fifth Circuit has considered the absence of a specific instruction on victim provocation and found the jury would have three possible vehicles in considering provocation as mitigation without a specific instruction on victim provocation. *See White v. Collins,* 959 F.2d 1319 (5th Cir.1992). In *White,* the petitioner asserted the victim had sprayed him with mace shortly before he shot her. White did not request a special instruction on victim provocation and none was given. The Fifth Circuit found this issue was procedurally barred from review and without merit. Concerning the merits of the claim, the court held:

If the jury believed White shot Mrs. Spinks as a reflex after she sprayed him with mace, the jury was able to give effect

---

4. Petitioner's written statement does not make any mention of this alleged provocation by either victim. The statement recites that petitioner shot at the walls and ceilings and did not think he had hit anyone.

to the mitigating value of this perception. First, it could have given effect to provocation by finding that ordinarily, absent such provocation, White would be nonviolent. Such an understanding of the evidence would support a negative response to the second issue on future dangerousness. Also, if the jury believed White discharged the gun accidentally or by reflex action because he was suffering from the caustic effect of mace, as he now hypothesizes, the jury could have responded to this evidence in two additional ways. The jury could have answered "no" to the deliberateness inquiry of the first punishment issue. It could have also determined at the guilt-innocence phase of the trial that White had no intent to kill. In fact, White's defense attorney made this argument to the jury at the guilt-innocence phase of the trial. The special issues submitted to the jury thus provided an adequate vehicle for the jury to respond to the mitigating effect of the alleged provocation by the victim.

*Id.,* 959 F.2d at 1324. Thus, petitioner, absent any specific instruction on victim provocation, had an adequate vehicle through which the jury could give mitigating effect to the alleged provocation by Tien. Furthermore, the evidence does not support a special instruction on victim provocation.

### 2. *EX PARTE* COMMUNICATION

During punishment deliberation, the jury sent out a note to the trial court asking for three explanations. The jury asked for a portion of Dr. Grigson's testimony, a copy of the protective motion to prevent a psychiatric examination and information concerning parole eligibility. The trial court responded to the note with a written explanation of parole eligibility that allowed a person who was sentenced to life to be released after serving fifteen years in prison. The trial court then admonished the jury, "You are not to consider or discuss the extent to which the good conduct time or parole laws may be applied to this particular defendant." *Vuong v. State,* No. 48,489 Tr. at 167.

■ Petitioner's second claim concerns the parole eligibility explanation. Specifically, in the claim, petitioner asserts this explanation

was *ex parte* by the trial court and deprived petitioner of his Sixth Amendment right to confrontation and effective assistance of counsel and Fourteenth Amendment right to due process.

■ A defendant has a constitutional right to be present when the court presents supplemental instructions to the jury. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). Petitioner asserts his Sixth and Fourteenth Amendment rights were violated when the court made the parole response *ex parte* to the jury.

The trial court ordered the three persons who would have been present in formulating the court's response to the jury note, to submit affidavits, nearly six years after the note had been submitted. Warren Clark, petitioner's trial co-counsel, denied he had ever seen the note prior to being shown the note by petitioner's habeas counsel. However, Clark was aware of the other two items contained on the 5″ by 7″ note from the jury. James DeLee, petitioner's trial co-counsel and appellate counsel, asserted he did not recall the note due to the intervening years, but had never known a time that "this court answered a note without review by attorneys." *Ex parte Vuong,* No. 26,391–01 Tr. at 27. The state's prosecutor, David McWilliams, stated that his notes reflected a discussion concerning Dr. Grigson's testimony in relation to the jury note and that he felt "certain that all aspects of the Court's response including the parole response were discussed with defense counsel." *Id.,* Tr. at 15.

Based upon the affidavits, and the trial court's own recollection, the trial court stated:

> There has been absolutely no showing by Petitioner that this Court engaged in an ex parte communication with the jury as alleged in Claim for Relief II. The affidavit of lead counsel, Mr. Jim DeLee and the lead prosecutor, Mr. Paul McWilliams, as well as this Court's personal recollections reflect that this Court has never answered a jury question without first presenting it to all counsel for suggestions and objections.

*Id.,* Tr. at 5. These factual findings are fairly supported by the affidavits and are entitled to a presumption of correctness. Based upon these factual findings, petitioner's claim has no merit.

### 3 & 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Related to the alleged *ex parte* communication, petitioner makes two further arguments. First, petitioner asserts that appellate counsel was ineffective for not asserting the parole claim on appeal. Second, petitioner asserts that if trial counsel was aware of the parole instruction he was ineffective for not objecting to the court's instruction.

■ The Supreme Court has addressed the issue of what a petitioner must prove to demonstrate an actual ineffective assistance of counsel claim. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show that counsel was ineffective a petitioner must demonstrate:

> first ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot be said that the conviction or death sentence resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to demonstrate the second prong of the *Strickland* test, a petitioner must demonstrate that counsel's deficient performance so prejudiced the defense that petitioner was denied a fair and reliable trial. *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir.1992).

■ The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon petitioner, who must demonstrate counsel's ineffectiveness by a preponderance of the evidence. *Martin v. Maggio,* 711 F.2d 1273 (5th Cir.1983). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ Although the ultimate question of whether counsel's performance is a mixed question of law and fact, state court findings of fact made in the course of deciding an ineffectiveness claim are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) if supported by the record. *Loyd v. Smith,* 899 F.2d 1416, 1425 (5th Cir.1990). A hearing by affidavit is sufficient to invoke the presumption of correctness. *Buxton v. Lynaugh,* 879 F.2d 140, 144 (5th Cir.), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990).

■ With regard to the appeal, petitioner must meet the two-prong standard of *Strickland. Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Ineffective assistance of appellate counsel is not demonstrated due to a failure to assert every non-frivolous claim on appeal. *Ellis v. Lynaugh,* 873 F.2d 830 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989).

#### a. trial counsel

■ Petitioner asserts his trial counsel was ineffective for not objecting to the parole instruction provided to the jury. In Texas, a jury for a capital defendant, once the defendant is found guilty, shall not be instructed on parole eligibility. *See* TEX. CODE OF CRIM.PROC.ANN. art. 37.07 § 4; *Felder v. State,* 758 S.W.2d 760 (Tex.Crim.App. 1988).

■ The parole instruction provided by the trial court instructed the jury to not consider or discuss parole in regards to petitioner. A trial court's short explanation on the effect of parole coupled with an instruction to not consider parole does not amount to a *per se* violation of state law. *See Jackson v. State,* 822 S.W.2d 18, 27 (Tex.Crim.

App.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 3034, 125 L.Ed.2d 722 (1993).[5] This is because a juror is considered to have followed his oath to follow the law provided, which in this case demanded the jurors not discuss or consider parole. Thus, trial counsel's failure to object to the court's explanation to the jury does not amount to ineffective assistance of counsel. Petitioner has failed to demonstrate that he was denied a fair and reliable trial due to counsel's failure to object to the court's explanation.

### b. appellate counsel

■ Petitioner asserts his appellate counsel was ineffective for not asserting the court's explanation on parole violated state law. However, the defendant in *Jackson* brought a similar claim on direct appeal and the Texas Court of Criminal Appeals found that they did not approve of the instruction but it did not amount to error when the juror had stated he would follow the law. Thus, the present claim would not likely be successful on direct appeal. Petitioner has failed to demonstrate he received ineffective assistance of appellate counsel.

### 5. "KEY MAN" GRAND JURY SYSTEM

■ Petitioner notes that Jefferson County employed a "key man" system of selecting grand juries prior to 1991. This system allowed each district court to nominate five grand jury commissioners who would in turn nominate members of the grand jury. Petitioner's argument is that this process, as applied to Jefferson County, resulted in an under-representation of women and blacks to Jefferson County grand juries.

■ "It is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury ... from which all person of his race or color have, solely because of that race or color, been excluded by the State...."

*Hernandez v. Texas,* 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). To prevail on a claim that petitioner's grand jury was unconstitutionally composed, the petitioner must 1) establish that the excluded group is a recognizable, distinct class, singled out for different treatment under the law; 2) prove the degree of under representation of the group over a long period of time; and, 3) demonstrate that the selection procedure is susceptible of abuse or is not racially neutral. *Rose v. Mitchell,* 443 U.S. 545, 565, 99 S.Ct. 2993, 3005, 61 L.Ed.2d 739 (1979). Additionally, "in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial under-representation of his race or of the identifiable group to which he belongs." *Id., quoting, Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977).

Petitioner has developed statistics which demonstrate historically an under-representation of women and blacks on Jefferson County grand juries. However, petitioner's argument fails for two reasons. First, petitioner is an Asian male. He does not assert there is any under-representation for his specific group on Jefferson County grand juries. Second, the grand jury which indicted petitioner was composed of five white males, one white female, three black males and three black females. Thus, despite statistical trends, petitioner's grand jury reflected a cross-section of Jefferson County as it was then composed. Petitioner has failed to demonstrate he was denied equal protection in the composition of his grand jury.

### 6 & 7. DR. GRIGSON'S TESTIMONY

Dr. James Grigson, a psychiatrist who often testifies in capital murder trials in Texas, testified at the punishment phase of the trial that of the one-hundred and fifty-six persons he had examined prior to petitioner, "about forty percent" of them were found to not be dangerous.

5. In *Jackson*, the trial court told a prospective juror, "There are some general guidelines that they talk about in that a person when he is sent to the penitentiary for any number of years, when he has served a third of his time or 20 years, calendar years, he is eligible for parole." *Id.* 822 S.W.2d at 26. This instruction accurately reflected the state law at the time and was coupled with an instruction to not consider the issue at punishment.

■ Petitioner has tracked the testimony of Dr. Grigson from 1978 until 1991 and noted the variation of Dr. Grigson's report of numbers of persons examined versus number of those found not to be dangerous. In 1991, during the trial of Jack Wade Clark, Dr. Grigson testified that the testimony he provided in Vuong's trial were "as accurate as I could think at that time, but the numbers were incorrect." Petitioner asserts the variation in the reported numbers and the admission that the numbers provided in petitioner's trial were incorrect amounts to perjury on the part of Dr. Grigson. Petitioner asserts the use of the alleged perjured testimony on the part of the state amounts to a denial of due process and cruel and unusual punishment.

■ The Due Process Clause of the Fourteenth Amendment forbids the knowing use by the state of perjured testimony. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The petitioner asserts the prosecution "knew or should have known" Dr. Grigson's testimony was perjured. Paul McWilliams, the prosecutor, submitted an affidavit in response to this allegation, stating he would never use perjured testimony, and does not believe Dr. Grigson committed perjury in petitioner's case. The trial court found that the state did not knowingly use perjured testimony. This finding is entitled to a presumption of correctness. Additionally, a review of the testimony, in relation to the varying numbers provided over thirteen years by Dr. Grigson, does not demonstrate any intentional deceit. Indeed, as the state notes, when the numbers were finally revealed to be inaccurate, the jury still found the accused defendant dangerous to society.

In capital sentencing, there is a mandate for a high degree of reliability in the information upon which the sentencing decision is based. Petitioner asserts Dr. Grigson's testimony fell so far below the reliability standard required that the introduction of this testimony violated the Eighth Amendment. In reviewing the testimony of Dr. Grigson, it is certain that in petitioner's trial, he was more conservative in his numbers than in other trials. If the jury placed great weight into this portion of the testimony, it would show less experience on the part of Dr. Grigson than he later testified he had gained. The petitioner has failed to demonstrate Dr. Grigson presented knowingly perjured testimony at his trial. Although this testimony was later demonstrated to be not accurate, any alleged error in reliability would be to the advantage of petitioner. This claim has no merit.

## 8. HAROLD GAUTHIER

■ Harold Gauthier was venireman number 17. On his jury questionnaire, Mr. Gauthier stated he did not believe in the death penalty and he did not believe he could serve on the jury due to his religious beliefs. Mr. Gauthier stated he was an Associate Minister at the West Beulah Baptist Church and did not believe one man could take another man's life. He stated he did not think there was any situation in which he could assess the death penalty. The state challenged Mr. Gauthier for cause due to his assertion that he could not impose the death penalty.

The defense attempted to rehabilitate Mr. Gauthier. Mr. Gauthier stated he could not answer the questions presented if it meant the death penalty. Mr. Gauthier, after further rehabilitation, stated he could possibly answer the questions presented affirmatively.

The state then returned to Mr. Gauthier. In response to a scenario of fifty persons dead by the action of another in the West Beulah Baptist Church, Mr. Gauthier stated he could not impose the death penalty, regardless of the crime. The defense, once again, after extensive questioning, got Mr. Gauthier to state he could answer the questions affirmatively. The trial court then asked Mr. Gauthier if he would answer the questions "yes," knowing it would result in the imposition of the death penalty. Mr. Gauthier stated he could not answer the questions affirmatively under those circumstances. The defense, once again, rehabilitated Mr. Gauthier into a response of, "I could. I____," to a question concerning affirmative responses before cutting off the response. The state then elicited from Mr. Gauthier that he would not answer the ques-

tions affirmatively if the result was the death penalty.

The defense returned to Mr. Gauthier. Mr. Gauthier stated, "what I was saying is that I could, but I didn't really say that I would." The state then again challenged Mr. Gauthier for cause. Mr. Gauthier agreed with the state's summation of his testimony that "he could consider it, but he could never do it, and, ultimately, that is the question. When it came down to rendering any decision, he could not render it." The trial court granted the challenge for cause over petitioner's objection.

 A venire member is properly excused for cause in a capital case when his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wicker v. McCotter*, 783 F.2d 487, 493 (5th Cir.), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986) (*quoting Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)).

> It is a test to be applied primarily by the trial court, for determinations of juror bias depend in great degree on the trial judge's assessment of the potential juror's demeanor and credibility, and on his impressions about that venireman's state of mind. The trial court's determination that a prospective juror could not perform his statutory function faithfully and impartially is accorded a presumption of correctness under 28 U.S.C. § 2254(d).

*Id.* It is not the function of the federal habeas court to substitute its judgment for that of the state court on the issue of granting a motion to strike a potential juror for cause. *See Williams v. Collins*, 16 F.3d 626, 633 (5th Cir.1994).

It is clear from the record that Mr. Gauthier could not serve his statutory function as a juror in the punishment stage of a capital trial. The exclusion of Mr. Gauthier was proper.

## C. Conclusion

Having reviewed the factual and legal basis of the eight claims presented, this court finds the claims do not present any error of constitutional magnitude. The petition for writ of habeas corpus will be denied and the stay of execution will be vacated by separate order.