IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 94-41265

HAI HAI VUONG,

Petitioner-Appellant,

VERSUS

WAYNE SCOTT, Director,
Texas Department of Criminal Justice,
Institutional Division

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
August 16, 1995

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Hai Hai Vuong challenges the dismissal of his petition for a writ of habeas corpus contesting his death sentence under 28 U.S.C. § 2254.  Concluding that the district court did not err, we affirm.


I.

The facts are set forth in Vuong v. State, 830 S.W.2d 929, 933 (Tex. Crim. App.), cert. denied, 113 S. Ct. 595 (1992), and Vuong v. Collins, 867 F. Supp. 1268, 1271 (E.D. Tex. 1994), and are now recounted here.  On December 7, 1986, Vuong and two friends were

playing pool and drinking beer at the Tam Game Room in Port Arthur, Texas. Vuong claims that Vietnamese gang members from New Orleans started to threaten him there. Vuong became angry, left the establishment, and went home to retrieve a Colt AR-15 or M-16 automatic or semi-automatic[1] .223 caliber rifle.

Vuong returned to the game room with his friend Thien Huu Nguyen, who was armed with a pistol. Vuong fired two shots into the rear wall or ceiling of the Game Room and told the patrons to remain as they were. The alleged gang members then exited the establishment. Vuong proceeded to shoot Nang Pham, who escaped out the front door, and Luan Mien Do.

Vuong shot and killed Tien Van Nguyen ("Nguyen") and claims that Nguyen stood up from behind a pool table and was reaching for a gun when shot. No weapon was found on Nguyen, and the testimony of witnesses indicated that he stood up and stated "Hai, it's me," in Vietnamese before he was shot.

After killing Nguyen, Vuong shot and wounded Binh Nguyen as he tried to run away, then shot Do a second time. Vuong went to the doorway that separated the game room from the adjoining cafe, which was part of the same business establishment. He walked toward a table where Hien Quang Tran was seated. Tran stood up, and Vuong shot him in the chin, killing him. Vuong took a telephone from the owner of the game room and left.

Vuong fired a total of eleven rounds. Two persons were killed

---

[1] Petitioner maintains that the rifle was automatic rather than semi-automatic. The weapon has never been recovered.

2

and three others wounded.  Vuong, Thien, and Tuan Van Nguyen left in a blue Monte Carlo that Tuan Van Nguyen had parked and waiting in the street.  An arrest warrant was issued, but Vuong eluded police.

## II.

In March 1987, a grand jury indicted Vuong for the capital murder of Hien Quang Tran in the course of committing the murder of Nguyen, in violation of TEX. PENAL CODE ANN. § 19.03(a)(6)(A).[2]  Vuong eventually was arrested on a public intoxication charge in California in July 1987 and was extradited to Texas.

Vuong gave a statement on August 28, 1987, in which he admitted to firing several shots in the game room but maintained that he did not recall hitting anyone.  His trial began in May 1988.  The jury convicted him of capital murder and answered affirmatively the special issues set out in TEX. CODE CRIM. PROC. ANN. art. 37.071, whereupon he was sentenced to death.

The conviction was affirmed on direct review.  Vuong v. State, 830 S.W.2d 929 (Tex. Crim. App.), cert. denied,  113 S. Ct. 595 (1992).  After an execution date was set by the state trial court, Vuong filed a federal habeas petition, alleging one claim.  The district court granted a stay of execution and a motion for substitution of counsel.  Vuong filed an amended petition, alleging eight errors.  The state asserted that Vuong had failed to exhaust

---

[2]  At that time, the statute provided that a person is guilty of capital murder if "he murders more than one person during the same criminal transaction."  This provision is now found in § 19.03(a)(7)(A).

3

state remedies, and the petition was dismissed without prejudice.

Vuong filed for state collateral relief and filed motions for a stay of execution, an evidentiary hearing, and the recusal of the judge who had presided over the trial. The recusal motion was denied by another judge on April 12, 1993.

The trial judge denied the motion for an evidentiary hearing and ordered that affidavits be filed by the parties. After that occurred, the state court entered findings of fact and conclusions of law recommending that relief be denied. After the Texas Court of Criminal Appeals accepted the trial court's recommendations, Vuong filed another federal habeas petition.

Vuong again raised eight grounds for relief and asked for a stay of execution, which was granted. The district court dismissed the petition and denied the motion for an evidentiary hearing. Vuong v. Collins, 867 F. Supp. 1268 (E.D. Tex. 1994). Vuong now appeals.


III.

Vuong's first claim is that the jury was unconstitutionally prevented from adequately considering certain mitigating evidence at the punishment phase of the trial. See Penry v. Lynaugh, 492 U.S. 302, 322-24 (1989). In Texas, the jury must answer three "special issues" affirmatively before a sentence of death may be imposed. See TEX. CODE CRIM. PROC. ANN. art. 37.071(b). Under Texas law applicable to Vuong, in a multiple murder case under TEX. PENAL CODE § 19.03(a)(6), the court was to submit the three special issues

4

only with regard to the "conduct of the defendant in murdering the deceased individual first named in the indictment."  TEX. CODE CRIM. PROC. ANN. art. 37.071(f).

The indictment named Hien Quang Tran first and Nguyen second.[3] As a result, the special issues were submitted as follows:

> 1.  Do you believe beyond a reasonable doubt that the conduct of the defendant that caused the death of Hien Quang Tran was committed deliberately and with the reasonable expectation that the death of Hien Quang Tran or another would result? . . .
>
> 2.  Do you believe beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?
>
> 3.  Do you believe beyond a reasonable doubt that the conduct of the defendant in killing Hien Quang Tran was unreasonable in response to the provocation, if any, by Hien Quang Tran?

Vuong now maintains that the operation of article 37.071(f) prevented the jury from considering the possible mitigating effects of the alleged provocation by Nguyen.

Under Texas law that applied at the time of this case, in a capital murder case alleging two or more murders in the same transaction, the defendant was prosecuted for the murder of the victim named first in the indictment while in the course of killing the other victim, regardless of whether the first-named victim was

---

[3]  According to the relevant portion of the indictment:

. . . HAI HAI VUONG and THIEN HUU NGUYEN on or about the 7th day of December, 1986, and anterior to the presentment of this indictment, in the County of Jefferson and State of Texas, did then and there intentionally and knowingly cause the death of an individual, HIEN QUANG TRAN, by shooting him with a firearm; and the said HAI HAI VUONG and THIEN HUU NGUYEN did then and there intentionally and knowingly cause the death of an individual, TIEN VAN NGUYEN, by shooting him with a firearm, and both of said murders were committed during the same criminal transaction . . . .

5

murdered first in time.  <u>Narvaiz v. State</u>, 840 S.W.2d 415, 433 (Tex. Crim. App. 1992), <u>cert. denied</u>, 113 S. Ct. 1422 (1993).  The state needed to satisfy the three special issues only with respect to the first-named victim.  <u>Id.</u>  Consequently, the trial court was correct to submit the special issues as they were worded.

This court has considered numerous claims by capital petitioners that the Texas special issue system has impermissibly restricted the sentencer's ability to consider relevant mitigating evidence.[4]  Because Vuong's claim is before us on a petition for federal habeas relief, "we must determine, as a threshold matter, whether granting him the relief he seeks would create a 'new rule'" of constitutional law under <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989).[5]

Under <u>Teague</u>, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government" or was not "<u>dictated</u> by precedent existing at the time the defendant's conviction became final."  <u>Id.</u> at 301.  The <u>Teague</u> principle seeks to validate "good faith interpretations of existing precedents made by state courts."  <u>Butler v. McKellar</u>, 494 U.S.

---

[4] <u>See, e.g.</u>, <u>Allridge v. Scott</u>, 41 F.3d 213, 223 (5th Cir. 1994) (father's testimony of petitioner's mental illness), <u>cert. denied</u>, 115 S. Ct. 1959 (1995); <u>Jacobs v. Scott</u>, 31 F.3d 1319, 1326-27 (5th Cir. 1994) (evidence of non-triggerman status and troubled childhood), <u>cert. denied</u>, 115 S. Ct. 711 (1995); <u>Lackey v. Scott</u>, 28 F.3d 486, 488-90 (5th Cir. 1994) (intoxication at the time of the offense, history of excessive drinking, low intelligence, childhood abuse), <u>cert. denied</u>, 115 S. Ct. 743 (1995); <u>Andrews v. Collins</u>, 21 F.3d 612, 629-30 (5th Cir. 1994) (good family relationship and low intelligence), <u>cert. denied</u>, 115 S. Ct. 908 (1995); <u>Madden v. Collins</u>, 18 F.3d 304, 306-08 (5th Cir. 1994) (evidence of "personality avoidance disorder," learning disability, troubled childhood), <u>cert. denied</u>, 115 S. Ct. 1114 (1995).

[5] <u>Penry</u>, 492 U.S. at 313.  <u>See, e.g.</u>, <u>Clark v. Collins</u>, 19 F.3d 959 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 432 (1994); <u>Motley v. Collins</u>, 18 F.3d 1223 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 418 (1994).

407, 414 (1990). This maxim applies even if those interpretations "are shown to be contrary to later decisions." Id. "Thus, unless reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor, we are barred from doing so now." Graham v. Collins, 113 S. Ct. 892, 898 (1993) (quoting Saffle v. Parks, 494 U.S. 484, 488 (1990)).

In order to determine whether Vuong is asking this court to fashion a new rule, we must examine the law pertaining to the proper treatment of mitigating evidence in Texas at the time that Vuong's conviction became final. We begin with the instances in which the Supreme Court has reviewed the question of whether the Texas capital punishment scheme adequately allows a jury to consider relevant mitigating evidence. See Johnson v. Texas, 113 S. Ct. 2658 (1993); Graham; Penry v. Lynaugh, 492 U.S. 302 (1989); Franklin v. Lynaugh, 487 U.S. 164 (1988); Jurek v. Texas, 428 U.S. 262 (1976).

In Jurek, the Court rejected a facial challenge to Texas's unique three special issues scheme and determined that the "constitutionality of the Texas procedures turn[ed] on whether the enumerated questions allow consideration of particularized mitigating factors." Id. at 272. After noting that the Texas Court of Criminal Appeals had indicated that as to the second special issue it would "allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show," id. (plurality opinion), the Court held that the system

7

promoted "the evenhanded, rational and consistent imposition of death sentences . . . ." Id. at 276 (plurality opinion). Thus, art. 37.071 survived the petitioner's constitutional challenge.

In Franklin, the petitioner contended that the Texas system was unconstitutional as applied because the jury was unable to consider his record of good conduct in prison. 487 U.S. at 172 (plurality opinion). Between the time of Jurek and Franklin, the Court had determined that, as a matter of law, in a capital case "'the sentencer . . . [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" Eddings v. Oklahoma, 455 U.S. 104, 110 (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604 (1978)). The petitioner in Franklin argued that the instructions in his case violated this so-called "Lockett-Eddings rule." He was not denied the opportunity to present his mitigating evidence but contended that the special issues did not give the jury "sufficient opportunity" to give "adequate weight" to the evidence. 487 U.S. at 172 (plurality opinion).

The Court rejected Franklin's claim. The plurality noted that while the state may not exclude evidence of a defendant's character, record, or the circumstances of the offense, it may provide the jury with some "framework for discharging [its] responsibilities." Id. at 179 (plurality opinion). The Court found that "the jury was completely free to give [the] evidence appropriate weight in arriving at its answers to the Special Issues." Id. at 180

8

(plurality opinion).

In her concurring opinion, Justice O'Connor expressed the following concerns about the Texas system:

> Under the sentencing procedure followed in this case the jury could express its views about the appropriate punishment only by answering the special verdict questions regarding the deliberateness of the murder and the defendant's future dangerousness. To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, the jury instructions would have provided the jury with no vehicle for expressing its "reasoned moral response" to that evidence. If this were such a case, then we would have to decide whether the jury's inability to give effect to that evidence amounted to an Eighth Amendment violation.

Id. at 185 (O'Connor, J., concurring in the judgment).

The Court found just such a situation in Penry, 492 U.S. at 322-28, in which the Court determined that the Texas system, absent a special instruction, did not allow the jury properly to consider Penry's evidence of mental retardation and childhood abuse. Id. at 322-28. The Court reaffirmed the principle, as embodied by Lockett and Eddings, that "punishment should be directly related to the personal culpability of the criminal defendant." Id. at 319. The special issues, according to the Court, did not provide the sentencer with "a vehicle for expressing its 'reasoned moral response'" to the mitigating evidence. Id. at 328.

More specifically, the Court found that, absent a definition of "deliberately," the jury was not able properly to consider the

9

evidence as it bore on Penry's "personal culpability" as encompassed in the first special issue. <u>Id.</u> at 323. On the second issue, the Court held that the evidence, absent an instruction, could be a "two-edged sword," both diminishing Penry's blameworthiness for the crime and increasing the probability that he would be dangerous in the future.[6] <u>Id.</u> at 324. Finally, the Court stated that a juror who concluded that Penry's mental state made him less culpable than a normal adult for his actions, still could conclude that Penry's actions were unreasonable in response to the amount of provocation by the victim. <u>Id.</u> The solution was "instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty . . . ." <u>Id.</u> at 328.[7]

Following <u>Penry</u>, as the cases cited previously indicate, this court has faced a myriad of "<u>Penry</u>" claims. Subsequent to <u>Penry</u>, however, we have stated that "while <u>Penry</u> appears to be worded broadly, the case has been interpreted narrowly." <u>Allridge</u>, 41 F.3d at 223.[8]

---

[6] Evidence indicated that Penry's mental state was such that he was unable to learn from his mistakes. 492 U.S. at 323.

[7] In response to <u>Penry</u>, Texas law was changed to provide that juries be instructed to "consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty." Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 37.071(2)(d) (Vernon Supp. 1995) (eff. Sept. 1, 1991).

[8] Because the <u>Penry</u> Court rejected the argument that <u>Teague</u> barred petitioner's claim, <u>Penry</u>, 492 U.S. at 319, it necessarily did not create a "new rule." <u>Graham</u>, 113 S. Ct. at 901.

10

Our narrow interpretation was later approved in Graham, in which the Court held that the petitioner's claim was barred by Teague. Petitioner had argued that the jury was unable to give effect to the mitigating evidence of his youth, family background, and positive character traits. 113 S. Ct. at 895. Graham's conviction became final on September 10, 1984. The Court concluded that

> reasonable jurists in 1984 would have found that, under our cases, the Texas statute satisfied the commands of the Eighth Amendment: it permitted petitioner to place before the jury whatever mitigating evidence he could show, including his age, while focusing the jury's attention upon what that evidence revealed about the defendant's capacity for deliberation and prospects for rehabilitation.

Id. at 900. Importantly, the Court found that nothing in Franklin or Penry undermined this conclusion. Id.

The Court specifically stated that it "did not read Penry as effecting a sea change in this Court's view of the constitutionality of the former Texas death penalty statute; it does not broadly suggest the invalidity of the special issues framework." Id. at 901 (footnote omitted). The Court noted that, unlike the situation in Penry, the "mitigating evidence was not placed beyond the jury's effective reach." Id. at 902. The Court held that the jury plainly could have answered "no" to the special issues based upon mitigating evidence, consistently with its instructions. Id. Whereas Penry's evidence "compelled" an affirmative answer to the future dangerousness issue and had some mitigating significance, "Graham's evidence quite readily could have supported a negative answer." Id.

11

The Court stated that "neither <u>Penry</u> nor any of its predeces-sors 'dictates' the relief that Graham seeks within the meaning required by <u>Teague</u>." <u>Id.</u> Concentrating on the "reasonable jurists" inquiry, the Court concluded:

> We cannot say that all reasonable jurists would have deemed themselves compelled to accept Graham's claim in 1984. Nor can we say, even with the benefit of the Court's subsequent decision in <u>Penry</u>, that reasonable jurists would be of one mind in ruling on Graham's claim today. The ruling Graham seeks, therefore, would be a "new rule" under <u>Teague</u>.

<u>Id.</u> at 903.

Finally, during the same term as <u>Graham</u>, the Court decided <u>Johnson v. Texas</u>, 113 S. Ct. 2658 (1993). The petitioner presented the Court with a <u>Penry</u> claim similar to the one raised in <u>Graham</u> but on direct review rather than on habeas. Thus, the Court was not constrained by <u>Teague</u>. The defendant in <u>Johnson</u>, as the petitioner in <u>Graham</u> had done, contended that the Texas special issues, absent special instructions, did not allow the jury to give adequate weight to mitigating evidence of his youth at the time of the offense. <u>Johnson</u>, <u>id.</u> at 2661. The Court, however, declined to take the step that would have amounted to a new rule in <u>Graham</u>. <u>Id.</u> at 2668. As this court has indicated, "the Court's analysis of Johnson's claim speaks directly not only to the scope of <u>Penry</u> but also to how the 'rule' Johnson requested would be viewed under <u>Teague</u>." <u>Motley</u>, 18 F.3d at 1233.

The <u>Johnson</u> Court had no doubt that the petitioner's youth was a relevant mitigating circumstance that should be within the effective reach of the sentencer. 113 S. Ct. at 2668. The Court

12

concluded that "there is ample room in the assessment of future dangerousness for a juror to take account of the difficulties of youth as a mitigating force in the sentencing determination." Id. at 2669. Furthermore, "the fact that a juror might view the evidence of youth as aggravating, as opposed to mitigating, does not mean that the rule of Lockett is violated." Id. (citing Graham, 113 S. Ct. at 901-02). The key is whether the "mitigating evidence is within 'the effective reach of the sentencer' . . . ." Id. Therein was the difference between Penry and Johnson: The jury "had a meaningful basis to consider the relevant mitigating qualities of petitioner's youth . . . ." Id. As a result, Texas was not required to give the jury an additional instruction beyond those given with the special issues. Id. at 2670.

Vuong's conviction became final on the day certiorari was denied, November 30, 1992. We must decide whether reasonable jurists, at that time, would have deemed themselves compelled to accept Vuong's claim under Penry. In order to grant relief in this case, we would be required to hold that at the time Vuong's conviction became final, the Eighth Amendment, in a multiple murder case in Texas, required that a jury be given a special instruction so that it could give proper weight to mitigating evidence of provocation by a victim not named first in the indictment. Under Graham, if the jury was able to give proper mitigating effect to the evidence under the instructions as given, such a holding))that a special instruction is required))would constitute a "new rule" of constitutional law under Teague.

13

As a threshold matter, we note that a jury is required to give effect only to _relevant_ evidence. As we stated earlier, in Texas a double murder case is treated as the killing of one victim in the course of killing another. The special issues need be submitted only with respect to the first victim named in the indictment.

The initial question is whether provocation on the part of the second-named victim is relevant mitigating evidence if that victim was killed first in time. We are not prepared to say that such evidence, as a matter of law, is not relevant. Certainly, provocation by one of the victims may be a circumstance of the offense that could affect culpability. See _First v. State_, 846 S.W.2d 836, 837-38 (Tex. Crim. App. 1992).

For example, provocation by the first victim in time might have "carried over" in some sense to the second victim if the two killings occur in close succession. The evidence in such a case might indicate that the killing of the second victim, first-named, was not "deliberate" under the first issue. Moreover, the evidence might indicate that the killing of the second victim is not indicative of the killer's likelihood to commit crimes in the future.

Much of Vuong's argument is premised on _First v. State_. In that case, the court found that the operation of art. 37.071(f) violated the dictates of _Penry_. Vuong now principally relies upon _First_ in his _Penry_ argument. The facts of _First_ are as follows:

> On May 30, 1986, the complainants, Luke Davis and Kimberly Holley, spend several hours at a Lubbock tavern. Later in the evening, appellant [Keith Wayne First] and Pierce Horton arrived at the tavern and began playing

14

pool with Davis and Holley. At approximately 1:00 a.m. appellant, Horton, Davis, and Holley left the bar together. While in the parking lot, Davis and Holley assaulted appellant and Horton. Davis overpowered appellant and repeatedly slammed appellant's head into the sidewalk and into the bumper of a parked automobile. Testimony as to the number of times appellant's head hit the car and sidewalk differed, but various witnesses agreed that Davis was in control of the fight. During the fight, Holley produced a knife and held Horton at bay by threatening to "cut [Horton's] goddamned guts out" if Horton attempted to assist appellant. Upon learning of the fight, the bar's doorman went outside and told the four to leave. When the fight between appellant and Davis ended, appellant retrieved a revolver from Horton's automobile. Appellant fired at and hit a passing vehicle. Davis and Holley attempted to escape in Holley's car. Appellant fatally shot Davis as Davis sat in the passenger seat of the car. Holley, standing on the driver's side, turned and attempted to flee. Appellant fired a fatal shot into the back of Holley. Moments later, police officers arrested Horton and appellant.

First, 846 S.W.2d at 837-38.

The court found that provocation on the part of Davis, who was the second-named victim, was a relevant circumstance of the offense that the jury should have been able to consider as mitigating evidence. Id. at 840. The court further held that the existing special issues did not provide an adequate means whereby that evidence could be considered. Id. at 842. In rejecting the state's contention that the punishment charge provided an adequate means by which the jury could give mitigating effect to the evidence, the court quoted the charge:

> In this case, the defendant, KENNETH WAYNE FIRST, has proffered the following matters as evidence of mitigating facts or circumstances: (1) voluntary intoxication at the time of the offense, (2) sexual molestation of the defendant as a child, (3) lack of education, (4) the youthful age of the defendant.

Id. at 841. The court concentrated on the fact that the trial

court presented the jury with an inclusive list of mitigating evidence. "It is clear . . . that the Eighth and Fourteenth Amendments are violated when the jury's consideration is limited to an inclusive list of mitigating circumstances." Id. (footnote omitted).

A majority of the court also concluded that the operation of art. 37.071(f) itself "precluded the jury's consideration of the mitigating evidence as it related to the provocation of Davis." Id. at 840; Id. at 845 (Miller, J., concurring). According to the concurrence, "by directing the jury's attention to only Holley's conduct, the charge implicitly encouraged the jury to not consider the conduct of Holley's accomplice, Davis, in considering whether or not to assess the death penalty." Id. (Miller, J., concurring).

For two reasons, we conclude that Vuong's claim nevertheless must fail. First, the facts in Vuong's case, unlike those in First, simply do not support a special instruction on the assertion that provocation by Nguyen affects Vuong's culpability with respect to the killing of Tran. The evidence indicates that Vuong himself initiated the violence in the first place by going home, retrieving a rifle, and returning to the game room. At least two persons were shot by Vuong before the alleged provocation by Nguyen occurred. There is no testimony, other than Vuong's, to support the claim that Nguyen was reaching for a gun when he was shot, and no gun was found at the scene. Petitioner then shot a fourth person and one of the previous victims a second time before turning the gun on Tran.

16

Moreover, Vuong argues at length about the alleged provocation by Nguyen but fails to indicate how Nguyen's actions reduce his culpability for the killing of Tran.[9] Thus, reasonable jurists could have concluded that Vuong's sentence was not constitutionally infirm.

Even if petitioner had made out a good factual case for relevant mitigating evidence, the argument fails as a legal matter. In its answers to the special issues, a Texas jury is able to give adequate weight to the type of provocation evidence that Vuong claims he presented.

As an initial matter, we emphasize that the punishment charge in Vuong's case, unlike First's, did not contain an inclusive list of mitigating factors for the jury to consider. The charge instructed the jury to consider "any evidence which . . . mitigates against an answer of 'yes' to each issue, including any aspects of the Defendant's character or record, and any of the circumstances of the commission of this offense which you find to be mitigating." Thus, one of the First court's legal rationales, namely that the jury was given only an inclusive list of mitigating factors, simply does not apply here.

_____

[9] See Madden, 18 F.3d at 307 (in which court found that in contrast to Madden's case, in Penry "there was a clear nexus between Penry's handicap and his criminal act"); cf. Earhart v. State, 877 S.W.2d 759 (Tex. Crim. App.) ("To obtain relief under Penry, a defendant must establish a nexus between the mitigating evidence and the circumstances of the offense which tend to excuse or explain the commission of the offense, suggesting that the defendant is less deserving of a death sentence."), cert. denied, 115 S. Ct. 431 (1994). This point is important, as once the jury had found that both victims were killed intentionally (thereby rendering the defendant death-eligible), the court was required to submit the special issues only with respect to the first victim. Therefore, the fact that provocation by Nguyen might reduce Vuong's culpability for the killing of Nguyen only would not be relevant unless it reduced the culpability for the killing of Tran as well.

17

Moreover, reasonable jurists looking at Vuong's conviction would not have felt compelled to conclude that the charge was deficient solely on account of the operation of art. 37.071(f).[10] This court has held that the possible mitigating effect of provocation by a victim can be adequately accounted for under Penry in the first two special issues. In White v. Collins, 959 F.2d 1319 (5th Cir.), cert. denied, 503 U.S. 1001 (1992), the petitioner had not requested that the third special issue be submitted, and consequently it was not submitted as part of the punishment charge. The petitioner, in his habeas proceeding, claimed that the victim had sprayed him with mace, therefore provoking a violent reaction. Id. at 1323-24. The court decided that the jury could have concluded that "absent such provocation, [petitioner] would be nonviolent" and thus could have rendered a negative answer to the future dangerousness inquiry. Id. at 1324.

This reasoning of White is also applicable here, where it is not the provocation of the victim with respect to whom the special issues were submitted that is at issue, but provocation by another victim. If, as Vuong claims, Nguyen provoked a violent response spilling over to the second victim, the jury could have concluded that Vuong did not pose a danger in the future.[11]

_____

[10] We acknowledge that to the extent that the holding in First was premised on a legal conclusion that art. 37.071(f) was legally infirm and not just that it was infirm as applied to First's case, our conclusion is at odds with First. We note, however, that we are not bound by the state court's pronouncements concerning the operation of Teague and the Penry rule.

[11] Cf. Narvaiz, 840 S.W.2d at 433 n.18 ("Although the substantive crime of capital murder is complete with the commission of the second murder, whether or not it was done "deliberately," the jury can still consider any
(continued...)

18

In response to White's claim that he accidentally or by reflex action discharged the gun because of the effect of the mace, the court determined that the jury might have answered "no" to the deliberateness inquiry of the first punishment phase. Id. Similarly, Vuong's jury could have determined that any provocation by Nguyen reduced the probability that the killing of Tran was "deliberate" and, as a result, could have returned a negative answer to the first special issue. See Heckert v. State, 612 S.W.2d 549 (Tex. Crim. App. 1981) (holding that "deliberately" and "intentionally" are not linguistic equivalents that would render art. 37.071 a nullity).

The court also found that the jury could have given effect to White's evidence at the guilt phase by determining "that White had no intent to kill." White, 959 F.2d at 1324. The same is true in our case. The jury was, in fact, given a self-defense instruction and could have determined that Nguyen was not killed intentionally. If so, then Vuong would not have been eligible for the death penalty. Accordingly, as reasonable jurists would not have felt that relief to Vuong was compelled by Penry, we must reject his claim in accordance with Teague.

IV.

Vuong's final two claims arise out of events that occurred during the deliberations at the punishment stage of the trial.

---

[11](...continued)
lack of deliberation in the second murder in its consideration of the second punishment issue.").

While deliberating, the jury submitted a note to the court asking, among other things, about Vuong's eligibility for parole. According to Texas law, "a jury may not consider the possibility of parole in its deliberations on punishment." Felder v. State, 758 S.W.2d 760, 762 (Tex. Crim. App. 1988). The court responded with an explanatory note indicating that a person sentenced to life in prison could earn good time that would reduce the amount of time he had to serve. The court also indicated that the jury was not to consider parole when determining the sentence.

Vuong now alleges two errors, the first of which is that the court communicated with the jury in response to the note without consulting with the defense attorneys. Vuong claims that this ex parte contact violated his Sixth Amendment and Due Process rights.[12] Vuong asserts that the federal district court erred in affording a presumption of correctness, and thereby denying an evidentiary hearing on this issue, to the state court's collateral review finding that there had not been an ex parte communication regarding parole between the trial judge and the jury. Vuong now requests a federal evidentiary hearing on this issue. In the event that this court denies the hearing and upholds the presumption, Vuong asserts that his trial counsel rendered ineffective assistance by failing to object to the communication to the jury.

---

[12] Where "the defendant is not actually confronting witnesses or evidence against him," the right to presence "is protected by the Due Process Clause." United States v. Gagnon, 470 U.S. 522, 526 (1985); Young v. Herring, 938 F.2d 543, 557 (5th Cir. 1991), cert. denied, 503 U.S. 940 (1992).

A.

Vuong initially raised his Sixth Amendment claim at his state habeas proceeding. Prior to the resolution of his claims, Vuong asked that the trial judge be recused from the state collateral review proceeding because he had presided over the original trial. After a live hearing conducted by another judge, the motion to recuse was denied.

The trial judge then denied Vuong's motion for an evidentiary hearing and ordered the parties to submit affidavits addressing the relevant issues. Based upon the affidavits of the lead defense counsel, Jim Delee, and the lead prosecutor, Paul McWilliams, and relying upon his personal recollections, the judge concluded that the petitioner had not shown that an ex parte communication in fact had occurred.

Federal habeas courts accord state findings of fact a presumption of correctness, provided the factfinding procedures employed were "adequate." 28 U.S.C. § 2254(d)(2).[13] This court has indicated that "it is clear that § 2254(d) does not preclude a federal court from presuming the correctness of factfindings made from a paper record." May v. Collins, 955 F.2d 299, 312 (5th Cir.), cert. denied, 504 U.S. 901 (1992). As long as the habeas applicant and the state are parties to the proceeding and the state court evidences its determination with a "'a written finding, written opinion, or other reliable and adequate indicia,'" a

---

[13] The statute states that the presumption of factual correctness shall not apply where "the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing."

hearing has taken place. <u>Summer v. Mata</u>, 449 U.S. 539, 546-47 (1981) (quoting § 2254(d)).

In order to determine whether the requirements of § 2254(d)(2) have been met by a paper hearing, "it is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual disputes underlying the petitioner's claim." <u>May</u>, 955 F.2d at 312. Vuong asserts that it was improper for the trial judge to rely upon personal recollections to resolve his state habeas claims. Therefore, Vuong contends, under § 2254(d)(2) and the related provision in § 2254(d)(3),[14] that the trial judge's findings on this issue are not entitled to the presumption of correctness that they were accorded by the federal district court. See <u>Vuong</u>, 867 F. Supp. at 1274-75.

We find Vuong's contention to be without merit. Under Texas law, judges may use, among other things, "personal recollection" to resolve any unresolved facts raised by a state habeas petitioner. TEX. CODE CRIM. PROC. ANN. art. 11.07(2)(d). In <u>May</u>, the state judge made a decision, based upon affidavits and his own firsthand knowledge of the trial, constituting a credibility determination that was accorded a presumption of correctness. 955 F.2d at 314-15; <u>see also</u> <u>Sawyers v. Collins</u>, 986 F.2d 1493, 1505 (5th Cir. 1993) (state habeas judge in a position to assess credibility of competing affiants), <u>cert. denied</u>, 113 S. Ct. 2405 (1993).

In fact, this court has found that a state habeas judge who

---

[14] Section 2254(d)(3) provides that the presumption shall not apply where "the material facts were not adequately developed at the State court hearing . . . ."

22

also conducted the trial is "in a different and better position to make determinations regarding the facts and circumstances surrounding that trial than other courts on direct or collateral review." Buxton v. Lynaugh, 879 F.2d 140, 146 (5th Cir. 1989), cert. denied, 497 U.S. 1031 (1990).  Thus, the fact that the judge has a personal recollection of the proceeding actually contributes to the adequacy of a paper hearing rather than detracting from it.[15]

Vuong argues that a distinction may be drawn between cases in which a judge is making credibility determinations, as in May, and a case in which the judge is making a factual finding directly related to his own actions.  We find Vuong's distinction unpersuasive.  He points this court to no authority that indicates that a state trial judge may not use personal recollection to resolve factual disputes, as Texas law allows, even with respect to his own conduct.  Judges are repeatedly asked and trusted to examine their own rulings, for example on a motion for rehearing or reconsideration.

Vuong also contends that the evidence that the state judge relied upon was insufficient to be presumed correct on the issue of whether an ex parte communication had taken place.[16]  The affidavit

---

[15] This fact distinguishes May from the case Vuong cites in support of his claim, Nethery v. Collins, 993 F.2d 1154 (5th Cir. 1993), cert. denied, 114 S. Ct. 1416 (1994).  In Nethery, the court determined that the state habeas findings, made following a paper hearing, were not entitled to a presumption of correctness.  At issue was the alleged bias of the state trial judge.  The court noted that "unlike the petitioner[] in . . . May, Nethery's petition was not considered by the same judge who had presided over his trial; thus, there was never a meaningful opportunity for the court to assess the credibility of the conflicting affiants."  Id. at 1157 n.8.

[16] Section 2254(d)(8) states that the presumption of correctness does not apply if

(continued...)

23

of Warren Clark, a member of the defense team, stated that he could not recall seeing the judge's communique to the jury on the law of parole. McWilliams, the prosecutor, stated that he felt "certain that all aspects of the Court's response [to the jury note] including the parole response were discussed with defense counsel." DeLee, the other defense attorney, did not recall seeing the note asking about parole information, nor did he recall the court's response, though he attributed this to the time lapse between the trial and the affidavit. He also stated that he had "never known of any time that this court answered a note without review by attorneys."

The trial judge supplemented this record information with his own recollection and determined that he had consulted with the attorneys on the question. The record information was certainly sufficient to support the finding of consultation when taken in combination with the judge's recollection.

B.

In the alternative, Vuong contends that his attorneys rendered ineffective assistance of counsel by not objecting to the submission of the note to the jury. See Strickland v. Washington, 466 U.S. 668 (1984). Under Washington, Vuong must establish that his

---

[16](...continued)
. . . that part of the record of the State court proceeding in which the determination of such factual issue was made pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

attorneys acted objectively unreasonably in failing to object and that he was prejudiced by the failure to object. Id. at 687.[17] Specifically, counsel's performance must be deficient under "prevailing professional norms." Id. at 690. Moreover, Vuong must establish more than that the outcome of his proceeding would have been different but for counsel's alleged errors. He must show that "the result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 113 S. Ct. 838, 842 (1993).

Because we find that Vuong has failed to establish the requisite prejudice, we need not examine the reasonableness prong. Vuong argues that had his attorneys objected, the instruction on parole would not have been submitted to the jury. Vuong, therefore, must prove that the instruction on parole was prejudicial as defined by Fretwell.

As we have noted, a jury may not consider parole possibilities when rendering its punishment decision. Vuong has not proven that the jury did take parole possibilities into account. Moreover, there is no dispute that the judge informed the jury that it was not to consider parole. Such limiting instructions generally are sufficient, as juries are presumed to follow their instructions. See Zafiro v. United States, 113 S. Ct. 933, 939 (1993).

The judgment is AFFIRMED.

---

[17] Vuong also would have to establish that he was prejudiced by any alleged unconstitutional ex parte communication between the judge and the jury. See Young, 938 F.2d at 557.

25